CASE 37—PETITION ORDINARY—JULY 6.

2me177
L119 758

# Louisville and Frankfort Railroad Company vs. Ballard.

### APPEAL FROM OLDHAM CIRCUIT COURT.

1. The paramount duty of a railroad company, through its agents intrusted with the conduct of a train, is to look to the safety of the persons and property thereon; subordinate to which is the duty to avoid unnecessary injury to animals straying upon the road.

2. A railroad company which is not bound to fence its track is not liable for injuries inflicted by its engines and trains upon cattle, &c., straying upon the track of the road, unless such injury was caused by the wanton and reckless negligence of the company or its agents or servants.

3. There is a peculiar obligation upon the owners of cattle to keep them off the tracks of railways. And if they are found there, whilst railroad companies and their agents and servants are not allowed to omit all care, and willfully and wantonly injure them by running engines and trains over them, yet said companies are not to be held liable for injuries inflicted under such circumstances, unless it is proved that the conduct of the companies, or their agents, has been reckless, wanton, and willful.

JAMES HARLAN, for appellant, cited 14 *B. Mon.*, 81; 5 *Denio*, 266; 4 *Comstock*, 349; *Pierce on Amer. Railroad Law, pp.* 322, 323, 324, 325, 329; 11 *Barb.*, 112; 13 *Ib.*, 493; 14 *Ib.*, 365; 22 *Ib.*, 574; 5 *Denio*, 255 and 266; 2 *Zabriskie*, 185; 10 *Foster*, 203; 2 *Gibbs*, 255-6; 16 *Ill.*, 198; 17 *Ib.*, 131, 541, 581; *Redfield on Railways, pp.* 371, 394, *sub-sec.* 6; 23 *Vermont*, 387; 19 *Penn. State Rep.*, 298.

GORIN & GAZLAY, on same side, cited 17 *B. Mon.*, 106 *to* 111; 14 *B. Mon.*, 75 *to* 82.

SAMUEL E. DEHAVEN and JNO. RODMAN for appellee.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT:

This was an action commenced in the Oldham circuit court by the appellee against the appellant to recover the value of a mare, alleged to have been willfully, wantonly, recklessly, and negligently run over and against by cars of appellant, and thereby so severely wounded and crippled as to be rendered wholly useless to appellee.

In the first part of the petition it is alleged that the mare, without the fault or knowledge of appellee, got upon the rail-

road of appellant, and while there running at full speed, attempting to escape the cars, she was run over and against, and injured as aforesaid.

It is further alleged that, before the mare was run over or struck by the cars, she ran along a public highway, near to and parallel with the railroad, for several hundreds of yards; that she was then seen by the servants and agents of the company, and when attempting to cross said highway over said road, immed ately before the cars, she was by the servants of the company prevented from crossing said highway and railroad; and was by said agents and servants willfully driven in and upon said railroad into a narrow inclosure, and there willfully, wantonly, recklessly, and negligently run over, crippled, and destroyed; all of which, it is alleged, could have been easily avoided by the appellant, without danger or unreasonable delay to its trains.

Every material allegation of the petition is controverted specifically by the answer; and it is averred, if the mare was upon the railroad track of the company, that it was the fault of the mare to be there, (or her owner,) and that there was no fault or negligence on the part of the company.

There was a trial by a jury, which resulted in a verdict for the plaintiff in the action.

A motion for a new trial was made, based upon the grounds that the court had erred in giving instructions to the jury at the instance of the plaintiff, and in refusing instructions asked for by the defendant; and that the verdict was contrary to law and evidence.

The motion for a new trial was overruled, and judgment was rendered upon the verdict in favor of the appellee.

To reverse that judgment this appeal is prosecuted.

Our first inquiry should be, did the circuit court err to the prejudice of appellant, either in giving or refusing to give instructions to the jury?

A single instruction was given at the instance of the appellee, who was plaintiff below. That instruction is as follows: "That if the jury believe from the proof that the defendant, with the exercise of ordinary diligence and care, could have

seen said mare when running along the highway and attempt-
ing to cross defendant's road, and could have permitted her to
cross said road and thus escape, without unreasonable delay or
danger to the cars and passengers, and failed to do so, and in
consequence thereof said mare was driven in and upon said
road, and there recklessly run over and destroyed by defendant,
that the law is for the plaintiff, and they should find for him
the value of the mare."

This instruction is erroneous in two particulars, and was
calculated to mislead the jury.

1. In the first part of the instruction the court left out of
view, or at all events did not present to the jury with the
proper degree of prominence, the superior obligation which
rested upon the defendant and its agents, under whose control
and management the train of cars was at the time the mare of
plaintiff was alleged to have been injured, to look to the safety
of the passengers and property upon the train.

The jury were told that if they believed from the proof that
the defendant, with the exercise of ordinary diligence and
care, could have seen said mare when running along the high-
way, etc.

This diligence and care relate not to the train, and the pas-
sengers and property thereon, but to outside objects; as, for
example, the mare of plaintiff.

As to passengers on a railroad, the company is certainly
bound by the highest obligations of morality and law to run
their engines and trains with the most scrupulous vigilance and
care.  (*Tonawanda R. R. Co. vs. Munger*, 5 *Denio*, 255; *Chicago
and Miss. R. R. Co. vs. Patchin*, 16 *Ills. Rep.*, 198; *Redfield on
Railways*, 323.)

The paramount duty of a conductor of a train upon a rail-
road is to watch, with the utmost vigilance, over the safety of
the persons and property in his charge; subject to which it is
his duty to use reasonable care to avoid unnecessary injury
to animals straying upon the road.  (*C. C. & C. R. R. Co. vs.
Elliott*, 4 *Ohio State Reports*, 474.)

Of course the same character and degree of obligation is
devolved upon the engineer, and every other agent of the com-

pany, who is intrusted in any manner, and to any extent, with the conduct of a train, within the sphere of his duties, which rests upon the conductor.

It is the duty of an engineer to look ahead of him, and to exercise a watchfulness over the track in advance of the locomotive, so nearly constant as always to be sure there is no obstruction to the train upon the track. In the discharge of this duty, the security of the passengers, their lives and limbs, and of the property upon the train, should be first in his thoughts. Everything else should be secondary. The right discharge of this duty might at times prevent the engineer from seeing a horse or other animal approaching the train from either side. And yet, to a casual observer, not having in mind the higher obligation under which the engineer is acting, it might seem that he could have seen the animal "with the exercise of ordinary diligence and care."

Pierce, in his work on American Railroad Law, (*p*. 332,) says: "The company is under superior obligations to persons and property on its trains," and concludes that it is only bound to use such care, to avoid injuries to cattle straying on the road, as is consistent with this superior obligation.

The circuit court, therefore, in the instruction to the jury upon this point, should have said that if they believed from the proof that the defendant, or its agents or servants, could, with due and proper regard to this paramount obligation, which all were under, to look first to the safety of the persons and property upon the train, have seen the mare; or in some appropriate terms have presented to the jury *this duty* of the company to the passengers and property under its care.

The same principle is applicable to that portion of the instruction which relates to the measures proper to be adopted by the company to prevent an injury to cattle when seen.

"Where a company is not bound by law to fence its track, it certainly is not responsible for injuries to cattle upon it, when the safety of persons and property on the train requires that it should not be arrested to preserve cattle from destruction."

"This may happen where it is doubtful whether the engine can be stopped with safety before reaching them, and there

appears to be less danger of accident by running over them at full speed than at a less rapid rate." (*Pierce on American Railroad Law*, 332.)

In this case there was evidence before the jury tending certainly to show that the engine could not with safety have been stopped before reaching the crossing near which the accident occurred. And conducing to show, further, that the best means that could have been adopted to prevent an accident, after the mare had been discovered by the engineer, was to increase the speed of the train, and thereby pass the crossing before the animal reached it.

If, therefore, the train could not, with safety to the lives and property upon it, have been stopped before reaching said crossing, the persons in charge of the train ought not to have attempted so to stop it; and such an attempt by them would have been a gross violation of their duty, legal and moral.

And if, in fact, the best means that could have been adopted to prevent an accident, after the mare had been seen by the engineer, was to increase the speed of the train, so as, if possible, to pass the crossing before the mare should reach it, and a proper regard for the safety of the persons and property upon the train required the adoption of such means, the company had the right, through its agents and servants, so to act and conduct the train in that emergency.

It was the duty of the court to instruct the jury in reference to this paramount and superior obligation under which the company was acting, and that all other duties and obligations were subordinate to this.

In failing so to instruct, there was error to the prejudice of the defendant.

2. In the latter part of this instruction the law was not given to the jury as favorably for the defendant as it should have been. The error in this instruction is more apparent, and its tendency to mislead the jury, and thereby injuriously affect the rights of defendant, is rendered more manifest, when it is considered in connection with the second instruction asked for by the counsel of defendant, which was refused by the court.

*That* instruction is in these words: "That unless they (the jury) believe from the evidence that said mare was destroyed by

the wanton and reckless negligence of the defendant's agents, they must find for the defendant."

In considering these instructions it must be remembered that it is alleged in the petition that the mare of the plaintiff (appellee here) was, at the time she received the injury complained of, upon the railroad track, to the exclusive use and enjoyment of which the company was entitled for the purposes of the road.

And further, that the company was not bound, by the act of incorporation, nor by any other law of this State, to fence the track.

Although the mare had broken from her fastenings in one of the streets of the town of Lagrange, near to which the accident occurred, and ran upon the track of the company's road, without the knowledge of the owner, yet it cannot be said that she was rightfully or lawfully upon said railroad track.

It has been decided by the supreme court of New York that the owner of domestic animals straying upon the track of a railroad company, and injured in a collision with its engines while operated in the ordinary manner, has no remedy for the loss against the company, although it might have been avoided by the exercise of ordinary care on its part; that gross negligence even, in the absence of intentional injury, will not subject the company to liability. (*Tonawanda Railroad Company vs. Munger, supra.*) This decision was afterwards approved by the court of appeals of New York, (*same case*, 4 *Comstock,* 349,) and has been followed in *Clark vs. Syracuse and Utica R. R. Co.*, (11 *Barbour*, 112;) *Talmadge vs. Rensselaer and Saratoga R. R. Co.*, (13 *Barbour*, 493;) *Terry vs. The N. Y. Central R. R. Co.*, (22 *Barbour*, 574, 586.)

It has been held in Illinois, where the owner of cattle grazing upon uninclosed lands of other persons is not a tresspasser, if they stray upon the track of an uninclosed railroad, and are killed by a collision with the engines or trains of the company, it is not liable for the loss unless its employees were guilty of willful or wanton injury, or such total and gross negligence as evidences willfulness. (*Chicago and Mississippi R. R. Co. vs. Patchin,* 16 *Illinois Reports*, 198.) The rule laid down in this case was subsequently adhered to in *Great Western R. R. Co.*

*vs. Thompson,* (17 *Ib.,* 131 ;) *Central Military Tract R. R. Co. vs. Rockafellow,* (17 *Ills.,* 541,) *and Ills. Central R. R. Co. vs. Reedy,* (*Idem,* 580.)

In New Jersey it was decided, in the case of *Vandegrift vs. Rediker,* (2 *Zabriskie's Reps., p.* 189,) that nothing but willfulness on the part of an engineer, or such negligence as would amount to willfulness, would make him liable for the loss of a cow killed whilst wrongfully upon the track of a railway.

There have been decisions by the courts of some of the States somewhat in conflict with these ; but we believe that where there is such conflict, it is caused by the existence of some statute requiring railroad companies to fence their tracks.

The case of the *New York and Erie R. R. Co. vs. Skinner,* (19 *Pennsylvania State Repts.,*) goes as far as any of the cases cited to relieve railroad companies from liability on account of injuries similar to the one here complained of.

See *Pierce on American Railroad Law,* (*chapter* 15,) which treats of " injuries to cattle " alone. The term *cattle,* as employed in the chapter referred to, and in this decision, is not confined to the more limited signification of the word which prevails generally in the United States, but includes horses, sheep, etc.

It seems to us that the weight of authority is decidedly in favor of the applicability and propriety of the instruction marked in the record No. 2, asked for by defendant, but refused by the court, which we have quoted above. It is in accordance with the reasoning and principles of the decision of this court in the case of the *Louisville and Frankfort R.. R. Co. vs. Milton,* (14 *B. Mon.,* 75,) although the facts in that case are somewhat different from those presented by the bill of exceptions in this case. We do not think it can be doubted that *that* decision establishes the principle that a railroad company is not liable for injuries inflicted by its engines and trains upon cattle straying upon the track of the road, unless such injury was caused by the wanton and reckless negligence of the company or its agents or servants. And this is properly, and indeed necessarily so, because of the exclusive right which the company has to the occupation and use of its road bed and track,

and the peculiar nature and exigencies of the business in which it is engaged.

Speed in the transit, and exact punctuality in the arrivals and departures of trains and their various connections, are imperatively required in this mode of conveyance. They are lawful, and the vital interests of the public require that they shall not be interfered with. (*C. and M. R. R. Co. vs. Patchin, supra.*)

In order to promote and preserve these essential character-istics of railroad management, and to insure, as far as human prudence can insure, the safety of the persons who may be passengers upon trains of railway cars, it is necessary that the tracks of such ways be kept free from obstructions of all sorts.

There is a peculiar obligation upon the owners of cattle to keep them off the tracks of railways. (*Lou. and Frank. R. R. vs. Milton, supra.*) And if they are found there, whilst railroad companies and their agents and servants are not allowed to omit all care, and willfully and wantonly injure them by run-ning engines and trains over them, yet said companies are not to be held liable for injuries inflicted under such circumstances, unless it is proved that the conduct of the companies or their agents has been reckless, wanton, and willful. (*Chicago and Miss. R. R. Co. vs. Patchin, supra.*)

We are not prepared to say there was error in refusing the first and third instructions asked for by the defendant.

Those instructions were, in their phraseology, calculated to mislead the jury as to the character of " the design " or " inten-tion " which it was necessary that they should believe to have existed on the part of the railroad company before they could find in favor of the plaintiff.

Inasmuch as another trial will be the result of our decision upon this appeal, we do not deem it proper now to express any opinion in regard to the character or weight of the evidence embodied in the bill of exceptions. The evidence upon a second trial may be materially variant from what it was on the first.

For the errors aforesaid the judgment of the circuit court in this action *is reversed,* and the cause remanded with directions to grant a new trial, and for further proceedings not inconsist-tent with the principles of this opinion.