JUDGE ELLIOTT
delivered the opinion of the court.
On the 15th day of December, 1876, the appellee Lebus brought this suit for the recovery of such damages as he had sustained by reason of one of appellant’s trains of cars having run over and killed and crippled several head of his cattle.
The plaintiff Lebus alleged that on the 21st of June, 1876, he was the owner of certain cattle, which, without his knowledge, broke from his inclosure, and, without his fault, strayed upon the defendant’s railroad track at a point about one and a half or two miles north of Cynthiana, and while so upon the track were, by the negligence and carelessness of the officers, agents, hands, and employes of the defendant, who were in charge of and had control of defendant’s passenger-train, running north upon its said road, run upon, over, and against, and by negligence and carelessness killed and crippled. The plaintiff stated the number of cattle killed and crippled by the negligence of the defendant’s agents and employes, and claimed that he had been damaged in the sum of $170.50.
The defendant denied the negligence and carelessness imputed to its agents and employes, and charged that plaintiff’s cattle had strayed upon its road by reason of the plaintiff’s negligence and carelessness.
Upon these issues the parties went to trial, and thereupon the plaintiff introduced evidence conducing to prove the number of his cattle that had been killed and crippled by the defendant’s train of cars, and closed his evidence; and after the defendant had introduced evidence which conduced to prove that its agents and employes had been guilty of neither negligence nor carelessness, in running its train at the time the cattle were killed, the plaintiff offered to rebut such evidence, by evidence that the defendant’s agents and employes had been guilty of negligence and carelessness in running the train of *520 cars by which his cattle had been killed and otherwise injured, and to this evidence the defendant objected, and its objection being overruled it excepted; and this is the first error complained of.
By section 4, chapter 57 of the General Statutes, it is provided that “All railroad companies in this commonwealth shall pay full damages to the owners of horses or other stock they may negligéntly or carelessly kill or damage, by their cars or agents, along said road or its branches, within said commonwealth ;” and by section 5 of the same chapter it is provided “ That the killing or damaging of any horses, or other stock, by the cars along said roads or branches, shall be prima facie evidence of carelessness and negligence of said company.”
As therefore, on the questions of negligence and carelessness in the killing of plaintiff’s cattle, the burden of proof was on the defendant, it was proper after the close of defendant’s evidence, to hear such' evidence as the plaintiff offered pertinent to that issue.
We conclude therefore that as the plaintiff was not bound to introduce any evidence on the question of defendant’s negligence till the close of its evidence on that issue, he had a right, after the defendant had concluded its evidence, to introduce the evidence on his side of such issue, for otherwise it seems to us that, in cases like this, where the plaintiff insists on his statutory right to require his adversary to assume the burden of proof as to negligence, etc., he thereby loses his right to introduce any evidence at all upon such issue.
It is contended also that the verdict was contrary to the evidence, and that the court erred to appellant’s prejudice in its instructions to the jury, both by giving those asked by appellee, and refusing some of those asked by appellant.
The cattle of the plaintiff were killed by the defendant’s train of cars on the evening of the 21st of June, 1876, as the ' train was running north.
*521 The defendant’s evidence conduces to the conclusion that the cattle of the plaintiff were not discovered on or near the defendant’s railroad track by any of its agents till the front car of the train was within one hundred yards of them, and that immediately on such discovery the agents of defendant were notified to put down brakes and try to retard the speed of the train and avoid injury to the stock, but the speed of the train was such, audits distance from the cattle so short when they were first discovered, that in spite of all the efforts of the agents of the defendant to the contrary, the train ran over six or eight cattle; a part of it went over an embankment into the river, wrecking a portion of the train, and resulting in serious disaster to passengers and property.
The weight of the evidence is that the train could not have been stopped at the speed it was running before proceeding beyond three hundred yards after making the first effort to do so, and therefore if the cattle were within only one hundred yards of the train when first discovered, it is manifest that no vigilance of those having control of the train could have prevented the disaster.
But it was established by the evidence of several passengers on the train that they saw the cattle before the train had approached within three hundred and fifty yards of them, and some of the passengers testified that the distance between the train and the cattle was four hundred yards when they were first discovered.
If therefore, according to the evidence, it were consistent with the higher duties which the defendant’s agents who had the train in charge owed to the passengers and property under their control to have so checked and retarded the train as to have avoided the disaster of which the plaintiff complains, it was their duty to have done so.
In the case of the L. & F. Railroad Co. v. Milton, 18 B. Mon. 61, and the Louisville & Frankfort Railroad Co. v. Bal *522 lard, 2 Met. 180, this court decided that a railroad company is not responsible for stock killed by its cars, unless such killing is caused by the wanton and reckless negligence of the company or its agents, and such was the law in this state until changed by the statute to which we have referred.
It is, however, contended by the defendant that the contributory negligence of the plaintiff, in permitting his cattle to stray from his pastures on to the road, relieves it from all responsibility for the injury done to them by its cars.
This court, in the case of the P. & M. R. R. Co. v. Hoehl, 12 Bush, 43, decided that the contributory negligence on the part of the plaintiff that will excuse the defendant from all responsibility must be such as but for it the accident could not have happened at all; and therefore, although the plaintiff may have been guilty of contributory negligence, still, if the defendant could have avoided the accident by proper precaution and skill, it was its duty to do so.
Besides, it was a fact known to the legislature at the passage of the statute swpra, that a large portion of the territory of this state was uninclosed by any fence or other inclosure, and the cattle of the farmers of such portion ranged over its native forests for subsistence; and it can not therefore be presumed that the legislature intended, by the statute under discussion, that the failure of the owner of cattle to keep them confined in his inclosure should shield the railroad company from all responsibility, however gross the conduct of its agent, for killing them.
It is also contended by the defendant that the statute has made no change in the degree of the defendant’s negligence, which must still be gross, wanton, and willful, to subject it to ■ responsibility. We are of a different opinion.
An act of the legislature of 1856 made the Louisville, Lexington & Cincinnati Railroad Company liable to the owners of stock killed or injured by the negligence of the com *523 pany or its agents, and this court, in discussing that statute, said, “ The law is changed by this enactment, and a less degree of negligence will make appellee responsible than is required by the rules of the common law.”
It must be presumed that when the legislature passed the law holding railroad companies and their agents responsible for injury to stock, by their carelessness and negligence, it was known that, under the law then existing, such companies were only responsible for the gross and wanton conduct of their agents, and that therefore, by the act supra, a modification of the existing law was intended.
If the legislature had intended by section 4, chapter 57 of the General Statutes, to make the responsibility of railroad companies for injuries to stock only follow the gross or wanton negligence of its agents, such would have been its language.
Besides, carelessness and negligence do not mean either gross or wanton carelessness and negligence, and can not be distorted into such a meaning.
No doubt in considering the question of the negligence of the agents of a railroad company, all their duties must be considered — their first and higher duties to the passengers and property in their charge, and their subordinate duties to avoid injury to live stock straying on the road in front of them; and such agents and employes will be guilty of actionable negligence, whenever the injury complained of is the result of their failure to observe that care, vigilance, and foresight that ordinarily prudent men, skilled and engaged in a like perilous service, should or ought to observe; and the fact that the property injured was permitted to run at large, will not shield the company from the consequences of the failure of its agents to observe such care and vigilance.
The evidence on the question of negligence was conflicting; but there was evidence conducing to prove that appellant’s agents and employes could, by the use of ordinary vigilance, *524 have seen the appellee’s cattle when its train of cars was four hundred yards in their rear. And whatever may have been the weight of the evidence, it was fully sufficient to support the verdict; or, in other words, the verdict was not so flagrantly against the weight of the evidence as to authorize the interference of this court.
If the cattle, by the use of proper vigilance, could have been discovered while the train was three hundred and fifty yards in their rear, and the train could have been stopped within three hundred yards of the place of such discovery, then the cattle could have been saved, as well as the disaster to the train, and there was certainly some evidence conducing to this conclusion.
We have examined the instructions with care, and think they are as favorable to appellant as it had a right to ask.
The appellant’s counsel ask this court to decide that the destruction of the cattle by appellant’s cars is not prima fade evidence of the negligence of its employes. As the statute makes such destruction prima faeie evidence of such carelessness and negligence, to decide otherwise would be to repeal the statute by judicial construction, which this court has neither the power nor the right to do.
As the instructions of the court below are in accord with the views expressed in this opinion, and as no error to the prejudice of appellant is perceived, the judgment of the lower court is hereby affirmed.