MARY G. ROPES vs. GEORGE FLINT & others.

Middlesex.    December 2, 3, 1902. — January 8, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Fence.*

The part of a stone wall assigned by fence viewers to one of two owners of adjoin-
ing lands, to keep in repair, lawfully may be taken down by him for the purpose
of repairing it or of replacing it by some other lawful partition fence.

BARKER, J.    The plaintiff and the defendant Flint are own-
ers of adjoining lands and upon the division line between the
lands is an ancient stone wall about forty-four rods in length.    In
the year 1821 the fence viewers set off to Flint's predecessor in
title the half of the division line next the road and to the plain-
tiff's predecessor in title the other half.    Each owner upon this
assignment built upon his part of the line a stone wall which still
remains in place but for a long time has been less than four feet
high.    In the spring of 1901 Flint took down and carried away
about sixty feet of the wall on that part of the line assigned to
his predecessor in title and thereafter at the request of the
plaintiff erected to her satisfaction a wall in place of the part he
had taken away.    This did not close the controversy between
the plaintiff and Flint as to the wall.    Neither party knew of
the action of the fence viewers had in 1821, and in August, 1901,
Flint called out the fence viewers by a petition representing
that a controversy had arisen between the plaintiff and himself
as to their respective rights in the partition fence and their obli-
gations to maintain the same.    Upon this petition the fence
viewers acted and in December, 1901, they and the landowners
being still ignorant of the assignment of 1821, made an order
assigning to the plaintiff the same half of the line which in 1821
had been assigned to her predecessors in title, and to Flint the
same half which by the first assignment had been assigned to his
predecessors in title.

Thereafter the plaintiff brought this bill against Flint and the
fence viewers of 1901.    After answer and replication the case
was heard by a judge of the Superior Court, the evidence at the

hearing being taken and reported by a commissioner appointed under Equity Rule 35. The judge entered a final decree which after reciting that he found certain facts stated in the decree dismissed the bill with costs, and the case comes here upon the plaintiff's appeal.

The bill has a double aspect. In the first place it seeks to have the action of the fence viewers in 1901 declared void and their assignment cancelled and stricken from the records of the town, not only because of the previous action of the fence viewers of 1821, but also because the viewers of 1901 were biassed and partial and because they fraudulently and wickedly conspired with Flint to injure the plaintiff under color of legal authority. In the second place the bill goes upon the ground that the plaintiff has a right to have the wall left undisturbed and to have Flint restrained from moving or in any way interfering with it or with so much of the plaintiff's land as is under the wall. The defence of multifariousness is not taken.

At the beginning of the hearing the judge ruled that so far as the plaintiff sought relief distinctly against the fence viewers or to affect the record of their action, the plaintiff could not have it under the bill; but the judge did not then deal with the question whether the plaintiff could try the validity of the action of the fence viewers upon the question of her rights as against Flint. This left the plaintiff free to prove the allegations of the bill as to the bias of the fence viewers and their conspiring with Flint to injure her under color of their authority. No evidence was introduced in support of any of these allegations, but one of the findings in the decree was that the assignment of 1901 was void and of no effect. We assume that this was because the division of the fence made in 1821 was still operative. At the hearing before us no contention was made by the plaintiff that the fact that the assignment of 1901 was void gave her a right to maintain her bill against any of the defendants. We treat that question as waived and express no opinion upon it.

The plaintiff does contend that she can maintain her bill because the wall is a monument marking the boundary between her premises and those of Flint, that it is the common property of both owners and that the half of the wall on her land belongs

to her in fee and that Flint has no right to take down and carry away any portion of the wall for any purpose, and that in effect it is a party wall the character and structure of which cannot be changed without her consent.

It is found as a fact that the wall was not a monument then in existence or to which reference was had in the original establishment of the line between the two parcels in question and that it was built by the respective owners as a fence between their lands under the assignment of 1821. There was no evidence that it had been mentioned as a monument in any deed. These considerations show that neither the whole wall nor any part of it was technically a monument within the meaning of the statutes prohibiting the wilful and intentional destruction of a monument without right. R. L. c. 208, § 78. Of course it was not a party wall, and equally of course although it had long served as evidence of the place of the division line it was merely a fence erected and kept up in pursuance of obligations imposed by statutes. See R. L. c. 33.

As to such fences it was decided in *Burrell* v. *Burrell*, 11 Mass. 294, 297, that the part of the fence assigned by fence viewers to one owner to keep in repair was his property so far at least that the removal of it for the purpose of replacing it with another fence of a different kind could not make him a trespasser. The statement in the opinion in *Newell* v. *Hill*, 2 Met. 180, at pages 182, 183, that each owner has an interest in the whole and in every section and that when built the fence belongs beneficially to both, is a general statement to be read in connection with the question to be decided in that case which was whether one owner could use the land on both sides of the division line on which to place the fence, either a structure upon or in part under the surface of the ground, or a ditch. That statement was not intended to qualify or limit the right previously declared of an owner to remove one fence for the purpose of replacing it with another. Cases from other jurisdictions depend upon the law of the locality to such an extent that we do not deem it profitable to discuss them in the present case. The decree finds that Flint has committed no act which obscures the division line and that it does not appear that he intends any action beyond removing the materials of that por-

tion of the fence to be maintained by him under the assignment of 1821 for the purpose of repairing the same or replacing it by some other lawful partition fence. That he has the right to do this follows from the decision in *Burrell* v. *Burrell, ubi supra,* and the possibility that in doing it he may do unnecessary damage is no ground for anticipatory relief.

*Decree dismissing bill with costs affirmed.*

*A. J. Selfridge,* for the plaintiff.

*E. I. Smith,* for the defendants.