# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## SHREVE v. NORFOLK AND WESTERN RAILWAY CO.

### June 10, 1909.

1. RAILROADS—*Conveyance for Depot Purposes—Deeds—Conditions— Covenants.*—A deed conveying land to a railroad company for "depot and other railway purposes" in consideration of the grantee's agreeing to erect and maintain a depot on the land conveyed, but containing no clause of forfeiture or right of re-entry for failure to do so, vests⁻ in the grantee a fee simple estate in the land conveyed, and the superadded words do not create a condition subsequent but only an agreement or covenant on the part of the grantee to use the land for the purpose specified. The deed is founded upon a valuable consideration. and the language used is to be taken most strongly against the grantor.

2. DEEDS—*Conditions Subsequent—Intention—How Ascertained—Case at Bar.*—Conditions subsequent are not favored in law, and are construed strictly because they tend to destroy estates. In determining whether the parties intended to create a covenant or a condition, it is necessary to consider the language employed, the situation of the parties, their relation to the subject of the transaction, and the object in view. The application of this rule to the facts of the case at bar shows that a covenant and not a condition subsequent was intended.

Error to a judgment of the Circuit Court of Tazewell county in an action of ejectment. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*·

The opinion states the case.

*Greever & Gillespie,* for the plaintiff in error.

*Henry & Graham* and *S. D. May,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This litigation arises out of the following state of facts:    On the 19th day of August, 1889, Geo. W. Gillespie and wife were the owners in fee simple and in the possession of about 400 acres of land in one boundary, situated in the Richlands, on Clinch river, Tazewell county, Virginia, and by deed of that date they conveyed two parcels of the 400 acres, aggregating about three acres, to the Norfolk and Western Railway Company, the granting clause being as follows:

*"Witnesseth*, that in consideration of the said The Norfolk and Western Railroad Company agreeing to erect and maintain a depot on the land conveyed by this deed the said George W. Gillespie and Barbara E. Gillespie, his wife, do grant unto the said The Norfolk and Western Railroad Company for depot and railway purposes all those two certain tracts, pieces or parcels of land, lying in Tazewell county, State of Virginia, situate in the Rich Lands."

·The covenants contained in the deed are general and in this language:

"And the said George W. Gillespie and Barbara E. Gillespie do covenant that they will warrant generally the property hereby conveyed, that they have the right to convey the said lands to the said Norfolk and Western Railroad Company, that the said Norfolk and Western Railroad Company shall have quiet possession of the said lands free from encumbrances; that they will execute such further assurances of the said lands as may be requisite, and that they have done no act to encumber the said lands."

The Norfolk and Western Railway Company claims and holds, under successive conveyances from the Norfolk and Western Railroad Company the title vested in the Norfolk and Western Railroad Company by the deed of August 19, 1889; and at

the point of the location of the land the railroad had been built, and the Norfolk and Western Railroad Company and its successor to the title has had possession of the land ever since the deed was made in August, 1889, up to the institution of this suit—or, as one witness says, "ever since it was staked off."

By deed dated April 14, 1890, Gillespie and wife conveyed the remainder of their boundary of the 400 acres of land to the Tazewell Land and Improvement Co., in which conveyance the three acres theretofore conveyed to the Norfolk and Western Railroad Company is expressly excepted, but the conveyance, after reciting that "the land company had purchased the land conveyed and are engaged in laying out a town and expect to expend large sums of money in the improvement and building up of said town, relying on the said agreement of the Norfolk and Western Railroad Company to comply with their said contract, to-wit, to erect and maintain a depot on said two pieces · of land," contains this clause:

"Now, in consideration of the premises, and for the consideration aforesaid, the parties of the first part hereto do hereby grant, assign and transfer unto the party of the second part hereto all their right, title and interest in and to said contract between themselves and said Norfolk and Western Railroad Company. This assignment and transfer of said contract is without recourse on the parties of the first part."

By deed of June 24, 1904, the Tazewell Land and Improvement Company conveyed to R. W. Shreve the land acquired by it under the said deed from Gillespie and wife, which deed to Shreve contains this clause:

"There is also excepted and reserved from this conveyance any right, title and interest in three acres of land in two parcels conveyed by George W. Gillespie and wife to the Norfolk and Western Railroad Company for depot and railroad purposes by deed dated the 19th day of August, 1889, * * * but the said party of the first part grants, conveys, assigns, and transfers to said Robert W. Shreve any right, title, claim or

interest which the said party of the first part now holds under and by virtue of the deed from George W. Gillespie and wife to said company, dated the 14th day of April, 1890. * * * "

There has never been any depot house built on the two lots in question, but there was a section house erected on the lots, and switches and sidings placed on them, and the railway company has never refused to build a depot on the premises, but has repeatedly stated that it would do so as soon as the business at that point (the name of which is Doran) was of such magnitude as to warrant it; and this action of ejectment was brought by R. W. Shreve in 1907 against the Norfolk and Western Railway Company to recover the possession of the said two parcels of land.

At the trial of the cause, upon the plea of the general issue—not guilty—both parties agreed to submit the matters of law and fact to the judge of the court for decision; and the court, at its December term, 1907, rendered judgment in favor of the defendant, to which judgment this writ of error was awarded.

The learned and exhaustive arguments for both plaintiff in error and defendant in error have taken a very much wider range than our view of the case would require, and we shall not attempt to review the numerous authorities to which we have been cited as bearing upon the questions, first, whether the language and stipulations of the deed of August 19, 1889, from Gillespie and wife to the Norfolk and Western Railroad Company, constitute and make a condition subsequent, to be performed by defendant in error; and second, if such is the true construction of the deed, and that condition subsequent has not been performed, but has been broken, has plaintiff in error the right to recover the land in this his action of ejectment?

In our view of the case, the primary and controlling question is whether or not the language of the deed by clear and unmistakable terms affixes to the grant in the deed a condition subsequent, upon the breach of which the land and the right of re-entry thereon reverted to the grantors; or whether the lan-

guage of the deed relating to the consideration is a naked promise, and at most only a covenant.

It will be observed that the deed in question does not, as is the usual form, affix to the grant a condition subsequent, but the only language used to indicate an intention to attach a condition to the absolute grant of this land to the grantee is that the grant is, "in consideration of the said Norfolk and Western Railroad Company agreeing to erect and maintain a depot on the land conveyed.* * *" No time is mentioned when this promise or agreement is to be carried out, nor is there any specification as to character or quality of the depot to be erected and maintained; nor is there expressed a reservation of title to the land in the grantors by reversion upon the breach of the promise or agreement made by the grantee, nor any intimation of the right to re-enter upon the land upon the breach of the promise or agreement to erect or maintain a depot on the premises.

In the brief of counsel for plaintiff in error it is conceded to be too well settled to admit of citation of authority, that "conditions subsequent are not favored in law, and are construed strictly because they tend to destroy estates; and the vigorous exacting of them is a species *summum jus,* and in many cases hardly reconcilable with conscience."

It is also recognized that "in the construction of every instrument, where the courts are asked to say whether the language used creates a covenant or a condition, the intention of the parties governs. If the parties to the instrument say upon its face that there is to be a forfeiture if its terms are not complied with, then the forfeiture is declared, regardless of results; and the converse is equally true."

So, as stated in *Union Stock Yards Co.* v. *Packing Co.* (C. C. A.), 140 Fed. 701 in determining the intention of the parties, and whether the terms of the instrument create a covenant or a condition, it becomes necessary to consider "the language em-

ployed, the situation of the parties, their relation to the subject of the transaction and the object in view."

We have already adverted to the language employed in the deed, and we will now look, in that connection, to "the situation of the parties, their relation to the subject of the transaction, and the object in view."

The undisputed and pertinent facts to be considered in this connection are that, shortly after the Clinch Valley Division of the Norfolk and Western Railroad Company was completed there was some indication that a depot would be needed at Doran. The railroad company was looking out for a place to locate the depot when it became necessary to erect it, and Gillespie, under whom plaintiff in error claims, who owned, as stated, about 400 acres of land at that place, conceiving the idea doubtless that a town might be laid out and built up there, making a depot at Doran not only desirable, but necessary, offered to give the railroad company a lot of land necessary for the railroad's purposes if it would erect and maintain a depot there, and the railroad company accepted the proposition, and a deed was drawn to that effect. This is, as counsel for plaintiff in error say, the plain import of the language used in the deed; and they further say "that a depot was not necessary at the time the conveyance was made, and perhaps has not been necessary since is claimed by the company and established by the record." In other words, Gillespie voluntarily offered to give the land needed for a depot at Doran, and the railroad company accepted the offer, the only binding effect being predicated upon the promise or covenant on the part of the railroad company to build and maintain the depot when the conditions at that point, in the economical and successful operation of the railroad as a public service corporation required it.

As counsel for plaintiff in error further say, "both parties to the deed knew that railroad companies could only erect depots at those places where the needs of the public required

them," and the point at Doran was not an exception to that rule. But although the loss to Gillespie of the increase in the value of the residue of his 400-acre tract of land resulting from the public needs not requiring a depot at Doran may be ever so great, this does not so change the rule of construction of his deed under which plaintiff in error seeks to maintain this action of ejectment to recover the land conveyed. Neither the language of the deed in question nor the subsequent conveyance of the residue of the 400-acre tract of land indicates an intention on the part of Gillespie that the title to the three acres conveyed to the railroad company for a depot site should revert to him in the event that no depot was built thereon, Not only is there no language used in his deed to the railroad company to declare a forfeiture in that event, but when read in the light of his subsequent conveyance to the land company, in which he expressly excepts therefrom the three acres theretofore conveyed to the railroad company and only assigns to the land company such right, title or interest as he had "in and to said contract between themselves and the said Norfolk. and Western Railroad Company"; and this "assignment and transfer" too "without recourse" to the grantors, it cannot be doubted that Gillespie regarded that he only held a covenant on the part of the railroad company to erect and maintain. a depot at Doran, and did not consider that the title and possession of the land would revert to him in the event that the public needs did not warrant the erection and maintenance of the depot contemplated. If such was not the construction of the conveyance, as understood by the grantors, it is inconceivable that they would have omitted therefrom language plainly declaring that the title and possession of the land conveyed was to revert to them in the event that a depot was not erected and maintained on the land granted.

Almost the identical question presented here, i. e., the comparative weight and standing to be given in a court of law to a promise or *covenant,* and a condition subsequent, was con-

sidered by this court in *King* v. *N. & W. Ry. Co.,* 99 Va. 625, 39 S. E. 701, and there the stipulations in the conveyance which were the subject of litigation were construed as *covenants,* and not conditions. The court, speaking through Harrison, J., and after a statement as to the contentions of the parties and the settled rule of law governing in construing the conveyances, said: "We are of opinion that the language employed in the deeds under consideration is apt language to create a fee simple, and that the superadded words, under the authorities, amount to covenants rather than conditions. The deeds are not voluntary, as contended, but are based upon the benefits to accrue to the reserved property of the grantor by reason of the use of the granted premises as a railroad terminal; hence they must be interpreted as any other deeds based upon a valuable consideration. The language is to be taken most strongly against the grantor, and most favorably to the grantee."

The features of the conveyance under consideration in that case were stronger in favor of a construction that a *condition* and not a *covenant* was intended by the contracting parties than are those contained in the deed we now have under consideration. In fact, the language in the deed before us, in apt words, creates a fee simple in the land granted, and there are no superadded words declaring in express terms or by clear implication, or in any terms whatever, that the non-performance of the promise and agreement of the grantee, stated to be the consideration moving the grantor to make the conveyance, should operate as a forfeiture of the land, giving the grantors the right to re-enter and possess themselves of it. In such a case, as is also said in the opinion just cited, the courts will incline to construe the language of the deed as creating only a covenant, and not a condition, thus adopting the more benignant construction upholding the instrument, and leaving the parties to pursue their appropriate remedies for a breach of covenant.

The principles of law adverted to are fully recognized in *Lowman* v. *Crawford*, 99 Va. 688, 40 S. E. 17, and in *Alex. & Wash. R. Co.* v. *Chew,* 27 Gratt. 547, where they are discussed at some length, the opinion saying: "When the grantor seeks to destroy an estate which he himself has created, it must plainly appear that the act is within the very terms of the condition and breach. It is not sufficient to show mischiefs and even losses which might have been provided against had they been foreseen. The fact that they were not and could not have been anticipated may be a sufficient reason for the failure to provide a remedy; but they cannot justify the courts in so enlarging the operation of the covenant as to make them a ground of forfeiture."

They are discussed also by the leading text-writers and commentators of the law, and the uniform view taken is in accord with the decided cases mentioned above and to follow. 1 Sharswood & Budd's L. Cas. in the Amer. L. of R. Prop., p. 123, *et seq.;* 4 Kent's Com. (2nd ed.), pp. 122-129; 2 Min. Inst. (4th ed.), p. 265-6; 2 Minor on R. Prop., sec. 529; 2 Dev. on Deeds, .sec. 970, and notes.

In *Green* v. *O'Connor,* 18 R. I. 56, 26 Atl. 692, 19 L. R. A. 262, the deed conveying land contained these words: "This conveyance is made upon the condition that the said strip of land shall be forever kept open and used as a public highway and for no· other purpose." *Held,* to create a covenant and not a condition subsequent, as claimed by the plaintiff, the opinion saying: "The clause in question is merely a declaration of the purpose for which the land conveyed was to be used and improved, to-wit, as a highway. It contains no language which imports that the grant shall be void in case the purpose for which the land is conveyed is not carried out; nor does it reserve to the grantors and their heirs the right, in that event, to re-enter on the land and resume possession of it as of their former estate. Moreover, the purpose declared is in its nature general and public, and not one inuring specially to the benefit

of the grantors. Such a declaration does not create an estate on condition, but merely imposes a confidence or trust on the land, or raises an implied agreement on the part of the grantee to use the land for the purpose specified."

It is very true that the court in that case quotes the statute governing such conveyances, but that fact does not detract from the force of the discussion of the general principles controlling in determining whether the language used in a conveyance of land should be construed as creating a covenant or a condition subsequent.

In *Rawson* v. *Inhabitants of School Dist. No. 5,* 7 Allen (Mass.), 125, 83 Am. Dec. 670, the opinion by the court, Bigelow, C. J., after stating that a deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, *ex proprio rigore,* imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated, and that conditions are not to be raised readily by inference or argument, says: "We believe there is no authoritative sanction for the doctrine that a deed is to be construed as a grant on a condition subsequent solely for the reason that it contains a clause declaring the purpose for which it is intended the granted premises shall be used, where such purpose will not inure specially to the benefit of the grantor and his assigns, but is in its nature general and public, and where there are no other words indicating an intent that the grant is to be void if the declared purpose is not fulfilled.

"If it be asked whether the law will give any force to the words in a deed which declare that the grant is made for a specific purpose or to accomplish a particular object, the answer is that they may, if properly expressed, create a confidence or trust, or amount to a covenant or agreement on the part of the grantee. This it is said in *Duke of Norfolk's Case,* Dyer, 138b, that the words *ea intentione* do not make a condition, but a confidence and trust. See also *Parish* v. *Whitney,* 3

Gray, 516, and *Newill* v. *Hill*, 2 Met. 180, and cases cited. But whether this be so or not, the absence of any right or remedy in favor of the grantor under such a grant to enforce the appropriation of land to the specific purpose for which it was conveyed, will not, of itself, make that a condition which is not so framed as to warrant in law that interpretation. An estate cannot be made defeasible on a condition subsequent by construction founded on an argument *ab convenienti* only, or on considerations of supposed hardship or want of equity."

We are of opinion that the deed under review does not admit of the construction contended for by plaintiff in error, but that its language creates only an agreement or convenant on the part of the grantee, and that the judgment of the circuit court in favor of defendant in error in this action of ejectment is plainly right.

Having taken this view of the case, it is unnecessary to consider the remaining question, whether upon the breach of a condition subsequent annexed to a grant of land, an assignee of the grantor's right to recover the land can maintain an action of ejectment.

The judgment of the circuit court is affirmed.

*Affirmed.*