## Pickett v. Lexington & Eastern Railway Company.

(Decided April 30, 1913.)

### Appeal from Fayette Circuit Court.

1.   Railroads—Compensation to Land Owner for Fencing—Action for Injury to Cattle—Negligence.—Under section 809, Ky. Stat., a land owner who has received compensation for fencing cannot recover for one-half the loss, if the cattle are injured by fright and not injured by the locomotive or cars; but he may recover full damages if the injury is due to the negligence of the servants of the railroad company; and there is no presumption of negligence where the cattle are injured by fright and not by the locomotive or cars.

2.   Railroads—Action to Recover for Loss of Horse—When Railroad Company Not Liable.—The railroad company is not liable for the loss of a horse due to his taking fright and running down a fence along the right of way, when the engineer failed to stop his train because he did not know there was danger to the horse, if he failed to stop.

**3.** Railroads—Location of Fences—Engineer Not Required to Know. —A railroad engineer is not required to know the location of the fences set along the right of way by the adjoining owners.

MATT S. WALTON for appellant.

GEORGE C. WEBB. SAMUEL M. WILSON for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

C. O. Pickett brought this suit against the Lexington and Eastern Railway Company to recover for the loss of a horse which occurred in this way: An engine with the wrecking train of the railroad company was returning to Lexington; as the train came out of a cut five or six miles from Lexington, the engineer saw a horse on the right of way about seventy-five feet from the engine. The land owner had received compensation for fencing, and had erected a fence along the right of way; but he had allowed the fence at places to fall down, and the horse had come over the fence on the right of way, and was feeding along by the side of the fence on the right of way and about thirty feet from the track. The train was running about twelve miles an hour. The horse took fright and ran down by the side of the fence in front of the train. The engineer slowed down the speed of his train to about six or seven miles an hour by the use of the brakes and cutting off the the steam, but seeing that the horse was gaining on him, he released the brakes. The horse ran down by the side of the fence until he came to the abutment of a culvert. At this point a fence post was set very near the stone abutment, and the horse finding his way blocked, undertook to jump the fence, but in doing this caught his feet in the barbed wire which was at the top, and was thrown over into the branch and killed. The engine at the time the horse jumped was 150 or 200 feet from him. The master mechanic of the railroad company was operating the engine, and was the only witness called by the plaintiff to prove how the accident occurred. He stated the facts above set out as to how the horse was killed. He also said:

"I could stop in 300 feet if I had to stop at that particular time, but after I slowed down to about six or seven miles an hour, I could stop in a hundred feet or less. The train did not stop because I released the brakes. The horse was outrunning me; I had no occa-

sion to bring it to a full stop. The horse was 150 feet in advance of me, and he was gaining on me all the time. The horse was running; he was frightened to a certain extent, he was running at quite a good gait. The best of my recollection there is plenty of room for a horse along there at the culvert. I couldn't see the abutment of the culvert from the locomotive, the position I was on the locomotive I could not tell. I never examined that culvert; have never been around it. The horse could have run on through and continued on if he had wanted to. I never tried to walk around there. I base my opinion from what I could see when running along there. I didn't notice the land on both sides, our attention is directed in front to the track, we don't pay any attention to the landscape. I knew the culvert was there; I think from my knowledge of the conditions that the horse could pass on. All the knowledge I had of the conditions was from just passing along on the locomotive. I had passed there at different intervals for 14 years."

On the above, which is a fair summing up of his statements, the court instructed the jury to find for the defendant, and the plaintiff's petition having been dismissed, he appeals.

Although the engineer said from his knowledge of the place there was plenty of room for the horse to pass, the fact was that a post was set near the abutment, and a horse could not pass, although the fence ran on past the culvert. The horse, when he reached this point, could have come up on the fill and passed over the culvert, but he could not have continued along the side of the fence as he was running, and when he reached the obstruction, being frightened, he undertook to jump the fence and was killed. Section 809 Ky. Stat., is as follows:

"If, by the locomotive or cars of any company, cattle shall be killed or injured on the track of said road adjoining lands belonging to or in the occupation of the owner of such cattle, who has not received compensation for fencing said land along said road, the loss shall be divided between the railroad company and the owner of such cattle; but in every case where cattle are killed or injured by the negligence or carelessness of the agents or servants of any company, it shall pay full damages for such killing or injury; and the killing or injury of cattle by the engine or cars of any company shall be

*prima facie* evidence of negligence and carelessness on the part of the company, its agents and servants."

Previous to the adoption of this statute it was held by this court that the railroad company was not liable for the killing of stock unless it was due to the wanton and reckless negligence of its agents. (L. & F. R. R. Co. v. Milton, 14 B. Mon., 65; L. & F. R. R. Co. v. Ballard, 2 Met., 182). The statute was passed to change the rule which the court had laid down. Its meaning is (1) if by the locomotive or cars of any railroad company, stock is killed or injured on the track of the railroad adjoining the lands belonging to or in the occupation of the owner of such stock who has not received compensation for fencing the land along the road, the loss shall be divided between the railroad company and the owner of the stock. Under this provision, where stock is not killed by the locomotive or cars of the company, but sustain injuries from being frightened on the right of way, there can be no recovery for one-half the loss. (K. C. R. R. Co. v. March, 7 R., 761; Ky. Cen. R. R. Co. v. Threlkeld, 8 R., 787. (2) But in every case where cattle are killed or injured by the negligence or carelessness of the agents or servants of the railroad company, it shall pay full damages for such killing or injury. Under this provision the company is liable for cattle killed or injured by the negligence or carelessness of the agents or servants of the company, although the stock are not killed or injured by the locomotive or cars of the company but sustain injury from being frightened on the right of way. (3) The killing or injury of cattle by the engine or cars of any railroad company shall be *prima facie* evidence of negligence or carelessness on the part of the company, its agents and servants; but the presumption of negligence does not arise, unless the cattle are killed or injured by the engine or cars of the company.

In this case as the owner had received compensation for fencing, there could be no recovery for one-half the loss, and as the horse was not killed or injured by the engine or cars of the company, the injury of the horse was not *prima facie* evidence of negligence on the part of the company's servants. The horse having been injured by becoming frightened on the right of way, and not having been hurt by the cars in any way, the burden of proof was upon the plaintiff to make out his case by showing negligence or carelessness on the part of the

agents or servants of the company. The only evidence as to how the injury occurred being the testimony of the engineer, the question is does his testimony show negligence on his part by reason of which the horse was killed.

His testimony shows that the horse ran along the fence for six or seven hundred feet before he undertook to jump over the fence. The only thing he did in any view of the case that he should not have done was to release the brakes after he got the train under control, and when the train would have stopped in one hundred feet if he had not released the brakes. But it is by no means certain if the train had then stopped that the injury would not have occurred just as it did occur. The horse was running rapidly down the fence, and it is very natural that if the train had stopped, the noise of the stopping train would have added to its fright. That a badly frightened horse running rapidly down the fence when he reached the obstruction, would have stood there and not have attempted to jump the fence, if the train had stopped is entirely a matter of speculation. The circumstances tend as strongly to show that he would have jumped in this event as in the other; for a badly frightened horse would most naturally try to jump the fence when he found his way obstructed by it.

In addition to this the engineer not regularly running on the road, and never having been on the ground, was not aware that there was any obstruction at the culvert that would prevent the horse from keeping on down the fence, and so was not aware of the danger to the horse when he saw him running down the fence. It is said that it was incumbent upon the railroad company to have an engineer upon its engine who would know the location of the fences along the right of way; but this is carrying the duty of the railroad company farther than it should be carried. L. & N. R. R. Co. v. Smith, 107 Ky., 178. The engineer must know his engine, his train and the track, but he is not required to know the location of the fences built by adjoining land owners or other structures at the side of the track. The law only required of the engineer that he should use ordinary care in view of the facts known to him; for he had to act on the facts as they were presented; and as he did not know of any danger to the horse in running down the fence, it cannot be said that he failed to use ordinary care in not guarding against a danger which was unknown to

him. In matters of this sort, it is hard afterwards to realize how quickly the whole thing happens, and how little time is given for reflection. In the case at bar the whole thing happened perhaps in less than a minute.

We therefore conclude that the circuit court properly instructed the jury to find for the defendant.

Judgment affirmed.