## Louisville, Henderson & St. Louis Railway Company v. Wilson.

(Decided June 21, 1918.)

### Appeal from Daviess Circuit Court.

1. Railroads—Injury to Stock—Damages—Statutes—Construction.— Under section 809, Kentucky Statutes, where adjacent land

owners have not received compensation for fencing right of way, railroads, whether negligent or not, are liable for one-half the value of stock killed by its trains; and where they are negligent, they are liable for the full value of such stock, whether the right or way is enclosed or unenclosed or whether the land owner has been compensated for fencing right of way.

2. Railroads—Injury to Stock—Lookout—Fences.—The servants of a railroad company in charge of its trains must maintain a lookout to avoid injury to stock upon its right of way, whether same be enclosed or unenclosed or whether the company has compensated the adjacent land owner for fencing the right of way.

3. Railroads—Injury to Stock—Negligence—Question for Jury.—In an action against a railroad company for damages for killing a mule, evidence that it was found dead at the foot of a small embankment in a ditch by the side of the railroad track with injuries to its head only was sufficient to submit the question of the negligence of the company to the jury.

W. P. SANDIDAGE and ERNEST WOODWARD for appellant.

BIRKHEAD & WILSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Appellee, who was plaintiff below, instituted this action against the defendant to recover damages for the alleged negligent killing of two mules. The defendant, in the first paragraph of its answer, traversed the allegations of the petition, and in a second paragraph, pleaded that the owner of the land, upon which plaintiff was a tenant, had been awarded and paid compensation for fencing in proceedings in which the company's right of way was condemned, but that the land owner had not built a fence between his land and the company's right of way; and that the stock strayed upon the railroad tracks from the adjacent land of said land owner. A demurrer to this paragraph of the answer was sustained, which defendant insists was error and upon which it relies for a reversal.

The judgment rendered against defendant is less than $500.00 and it has filed a motion in this court for an appeal, which is granted because of the novel question involved, although the judgment must be affirmed.

1. Numerous authorities from other jurisdictions are cited by counsel for defendant to the effect that under the circumstances related the land owner can not recover, but it is practically conceded that, if section 809, Kentucky Statutes, is applicable and authorizes a recovery,

these authorities from states not having such a statute would be inapplicable. It is insisted, however, that this section is not applicable here, and that it was so decided in Crawford v. Southern Railway Company, 153 Ky. 813, wherein it is said that section 809 of the statutes applies only to states of case in which no compensation has been paid for fencing and there has been no attempt on the part of the railroad company to comply with sections 1789-1799 of the statutes relating to railroad fences. It is made quite clear in the opinion that this statement relates only to the first provision of section 809, and it is expressly so limited in the syllabus to that opinion. Besides, the facts involved in that case are not only dissimiliar but just the reverse of the facts involved in the case at bar. There, no compensation for fencing had been paid to the land owner and the railroad company had attempted to comply with the statutes relating to railroad fences by building its half of the fence, and the liability adjudged was for a failure in the attempt at compliance with such sections and in the absence of negligence in the operation of the train killing the stock; here, the land owner had been paid for fencing and the liability is predicated upon the negligent operation of defendant's train, and such negligence is not covered or referred to in any of the sections relating to railroad fences, 1789 to 1799, but is expressly covered by the last two provisions of section 809, which is in three parts, as we have indicated by the insertion of numerals:

"(1)   If, by the locomotive or cars of any company, cattle shall be killed or injured on the track of said road adjoining the lands belonging to or in the occupation of the owner of such cattle, who has not received compensation for fencing said land along said road, the loss shall be divided between the railroad company and the owner of such cattle, (2) but in every case where cattle are killed or injured by the negligence or carelessness of the agents or servants of any company, it shall pay full damages for such killing or injury, (3) and the killing or injury of cattle by the engine or cars of any company shall be *prima facie* evidence of negligence and carelessness on the part of the company, its agents and servants."

It is clear that, by the first provision of this section, where the owner has not received compensation for fencing, the railroad company is made liable, whether

negligent or not, for one-half of the value of stock killed by its trains; and it has been so held in L. & N. R. R. Co. v. Belcher, 89 Ky. 193, and Pickett v. L. & E. Ry. Co., 153 Ky. 460. It is equally clear that by the very terms of the second and third provisions of this section that "in every case where cattle are killed or injured by the negligence or carelessness" of the company, it is liable for all damages; "and the killing or injury of cattle by the engine or cars of any company shall be *prima facie* evidence" of the company's negligence. There can be no doubt, unless we disregard the plain meaning of the simple language employed, that the legislature meant, by the last two provisions of this section, to make the railroad company liable in every case for the full value of stock of an adjacent land owner, which it negligently kills, regardless of whether the right of way is fenced or not. This being true, the fact that the right of way has been fenced, or that the defendant has paid to the land owner, in condemnation proceedings, damages in the estimation of which fencing has been included, is not a defense where the stock of such land owner has been negligently killed.

2.  Counsel for defendant also argue, in support of its position that by paying the land owner for fencing, the company relieved itself of the duty of lookout for cattle of the land owner and his tenants upon the right of way through his land. This argument is clearly untenable and at variance with the statutory liability in every case of negligence, especially when proof of the kiling is made *prima facie* evidence of negligence, because there can be no negligence in the absence of duty, and the negligence implied from the killing imposes the duty of maintaining a lookout to avoid killing or injuring stock. Troutwine v. L. & N. R. R. Co., 32 Ky. L. R. 5. Even though the railroad right of way is lawfully enclosed, the duty to maintain a lookout is the same. L. & N. R. R. Co. v. Simmons, 85 Ky. 151. If the company is under the duty of lookout to avoid killing cattle when the right of way is lawfully enclosed, it must necessarily follow that it owes that duty when the railroad is not enclosed, even though it has paid the owner of the land for fencing, which it knows has not been constructed, since there would be less liability of encountering stock upon track in the former than in the latter case and consequently less necessity for a lookout.

. Counsel for defendant rely upon the case of Pusey v. N. N. & M. V. Co., 15 Ky. L. R. 303, from which they cite:

"The plaintiff having entered into a contract with defendant railroad company concerning the fencing of the company's right of way through his land, by the terms of which the company agreed to furnish a certain part of the material for the fence, and plaintiff agreed to construct the fence as soon as the materials were furnished him, in consideration of which plaintiff released the company 'from any and all liability it may incur by reason of the killing or injuring of any stock by the trains of the company,' this contract relieved the employes of the railroad company in charge of its trains from the duty of keeping a lookout for stray cattle while passing plaintiff's lands, but the company was still bound to use all proper means to avoid injuring such cattle after they were discovered to be in a perilous position.

"It was the duty of the plaintiff to build the fence within a reasonable time after he had notice that the materials which the company agreed to furnish had been delivered, and if he failed to do so within such reasonable time, and his stock was killed after such reasonable time passed, the company owed him only such duty as it would have owed him if the fence had been constructed, but that duty it was bound to perform, and it was error to instruct the jury that in such a state of case the law was for defendant without regard to the question of negligence."

It will be observed that under such circumstances the court held that the company owed the land owner "such duty as it would have owed if the fence had been constructed, but that duty it was bound to perform, and it was error to instruct the jury that in such a state of case the law was for defendant without regard to the question of negligence;" so that, even that contract, which expressly released the company from any and all liability for killing or injuring stock, while relieving the defendant of the duty of a lookout, was not a defense against negligence but affected only the question of what, under such a contract, would be negligence; and that contract, had it been pleaded as a complete defense as was the payment for fencing pleaded here, would have been held insufficient.

3. Appellant also complains of the court's refusal to direct a verdict in its favor as to the bay mule killed,

upon the ground that there was no evidence that this mule was injured or killed by the locomotive or cars of the railroad company. The mule was found early in the morning lying in the railroad ditch on the south side of the track near a bank some six or seven feet high on that side of the track, and the mule had been injured in the head only, which unquestionably had been struck and run over by defendant's train. It is argued that it is just as reasonable to suppose that the mule fell over the bank and broke its neck and that the train, coming on later, ran over its head, which was lying across the rail, as it is to suppose that it was walking or standing near the track and the engine struck it in the head, killing it without maiming or bruising any other part of the body; and that a case was presented where the evidence was equally consistent with the existence or nonexistence of negligence which entitled the defendant to a peremptory instruction. We do not think the evidence in this case brings it within the line of cases holding that where the evidence is equally consistent with negligence or non-negligence the plaintiff must lose, since the evidence, we think, is quite conclusive that the mule was killed by the train, and it can not reasonably be inferred therefrom that the mule fell off a bank six or seven feet high and broke its neck.

Wherefore, the judgment is affirmed.