## Seaboard A. L. Ry. Co., *et al. v.* Anniston Manufacturing Co.

*Bill to Cancel Deed.*

(Decided April 23, 1914. 65 South. 187.)

1. *Deeds; Conditions Subsequent.*—No technical words are required to create a condition subsequent in a deed.

2. *Same.*—The law does not favor conditions subsequent as they tend to the destruction of estates, and are hence, strictly construed.

3. *Same; Forfeiture; Statu Quo.*—Whether the grantee can be put in statu quo is an important factor in determining the question of forfeiture of the deed for breach of conditions subsequent.

4. *Same; Other Remedy.*—A forfeiture will not be declared for breach of a condition subsequent in a deed, if the grantor have other remedies either at law on the covenant, or an equity by vendor's lien or specific performance, or by injunctive relief restraining the use of the property beyond the restriction.

5. *Same; Covenants and Conditions Distinguished.*—Where there is doubt as to whether a clause in a deed is a condition or a covenant, it will be construed as a covenant.

[Seaboard A. L. Ry. Co., et al. v. Anniston Manufacturing Co.]

5. *Same; Language of Instrument.*—The language employed in the instrument, the circumstances under which the contract was made, the relative position of the parties, and the purposes to be accomplished, will be looked to in determining whether the language used in a deed creates a covenant or condition.

7. *Same; Right of Way; Conditions Subsequent; Forfeiture.*— Where it appeared from the facts that the parties could be placed in statu quo, that the deed did not bind the railroad, to build its lines, and that there was no other adequate remedy, a conveyance of the right of way in consideration of one dollar, and of the benefits to be derived by the grantor from the construction and operation of the railroad to be built, would be held to create a condition subsequently breached by the failure of the railroad to build its road.

8. *Same.*—Where a deed of a right of way based on a consideration of one dollar, and the benefits to be derived by the construction of the road contained no time limit, but was made in references to ordinances and franchises of a city which did name a time limit, the time thus named is prima facie the reasonable time implied by law to comply with the conditions.

9. *Same; Right of Way; Conditions; Reasonable Time.*—Where the conveyance was based on a consideration of one dollar, and advantages to be derived by the construction of a railroad, but contained no time limit, the road must be constructed within a reasonable time; and a reasonable time within which to comply with the conditions subsequent, is a question of fact.

10. *Appeal and Error; Misjoinder; Right to Object.*—Where the appeal is by one party alone, that party is not in position to raise the objection on appeal, that another party was improperly joined in the bill.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

Bill by the Anniston Manufacturing Company against the Atlanta & Birmingham Air Line Railway Company and the Seaboard Air Line Railway Company to cancel and surrender a deed granting a right of way, and for general relief. From a decree for complainant, respondents appeal. Affirmed.

The following is the opinion of the chancellor referred to:

"The only question called to the attention of the court on the oral argument, and in the briefs, is as to the proper construction of certain recitals or provisions in a deed of a right of way made by complainant to the Air Line Railway Company. I shall assume, without

a critical examination of the demurrer, that this is the only meritorious question, although it may be doubted that the Air Line Railway Company is a proper party under the allegation that it has conveyed away all of its interest in the property in the controversy.

"The provisions of the deed pertinent to the controversy are these: 'Know all men by these presents that the undersigned, the Anniston Manufacturing Company, a body corporate, for and in consideration of one dollar to it in hand paid by the A. & B. A. L. Ry. Co., a body corporate, and for the further consideration of the benefits to be derived by the Anniston M. Co. from the construction and operation of the railroad to be constructed and operated by the said A. & B. A. L. Ry. Co., or by its successors and assigns, as now contemplated by said railroad in and to the city of Anniston, in said county and state, has granted, bargained, and sold, etc., the following described right of way for the construction, maintenance, and operation of its said railway, to wit, etc. And for the consideration aforesaid, the said Anniston M. Co. consents to the said A. & B. A. L. Ry. Co., its successors and assigns, constructing and maintaining and operating its said railroad in, over, and along and across any streets, avenues, and alleys that said right of way croses, or in, over, and along which it may extend, and for the consideration aforesaid the said Anniston M. Co. releases said railway, its successors and assigns, from any and all damage that may result to it, or to any lots or land belonging to it, or to which it has or may have an interest that may abut upon any streets, avenues, alleys, or public highways, etc., from the construction of the railroad according to its proposed plan or survey of the railroad in the city of Anniston, and according to the ordinances of the city recently passed and adopted by the city of Anniston,

and from the maintenance and operation of said railroad by said railway company, its successors and assigns.'

"The right of way granted in the deed is alleged to cover a strip of land very near the manufacturing plant of complainant, and to divide its property, and extends apparently for a distance of approximately 800 feet in an irregular direction through the property of complainant.

"It appears from the amendment last filed to the bill that the railroad whose construction was contemplated by the provisions of said deed was to be a branch line from Jacksonville to Anniston, about 15 miles long, and that for the construction of the same the city of Anniston had by ordinance granted a franchise to the said railway company, or its assigns, of no benefit, except by the building of the railroad. On the other hand, the continued existence of the easement barren of a railroad depreciated the value of complainant's property. If the grant should be held to continue, though the contemplated railroad should never be built, the grantee could prevent complainant from passing over or using in any way the right of way, could erect barriers and prevent trespassing, and might force complainant to repurchase at grantee's figures, if complainant should be under the necessity of recovering control of the surface of the granted right of way.

"Of course the grantee might abandon the easement and so lose it; but, if its right is absolute, and without any condition, that is, if there is nothing more than a restriction that the right of way can be used only for a railroad, it could hold the right of way intact, and never use it for any purpose whatever. In other words, if the right of way shall remain intact forever, though no railroad be constructed, the complainant has parted with

its property for a definite purpose of benefit to itself, which purpose it has no power to accomplish or compel, and there is no other benefit of any equivalent value to be derived from the conveyance, but, on the other hand, a positive and serious detriment, or at least the continuous possibility of the same.

"I think this proposition is undoubtedly true, because it could not be plausibly argued that a bill for specific performance to compel the building of the railroad would lie, and a suit on a supposed covenant would not furnish adequate relief. The only damages recoverable in such a suit, so far as I am able to see, would be the difference in the market value of the property with the railroad and without the railroad.—*Mobile & Montgomery Railway Company v. Gilmer*, 85 Ala. 422, 5 South. 138.

"Failure to obtain reduced freight rates and failure to have competitive railroad facilities could not be considered as elements of damage, except perhaps as such circumstances bear on the value of the property under the two different conditions. Complainant could not even recover the value of the property included in the right of way, nor for the inconvenience of having its property divided (these things being voluntarily conveyed away), as it could in a condemnation proceeding. It is perfectly plain, I think, that the complainant could not get the equivalent or anything near the equivalent in damages of the benefits which would result from the construction and operation of the road.

"Now it is also undoubtedly true that the considerations just mentioned furnish no reason for reading something into the deed that is not expressed; but they are persuasive of the mental attitude of the parties at the time of making the deed, and indicate the intention of the parties. Giving the matter the most impartial con-

sideration of which I am capable, I can reach no other conclusion than that the parties really thought the easement would not continue to burden the property indefinitely in the event that no railroad should be built. Of course I am just now speaking of actual intent as distinguished from an expressed intent.

"This leaves for consideration the more or less difficult question: Has the purpose or intent that the easement should cease to exist in case of a failure to build the road found adequate expression in the document which they have caused to be executed as an expression of their purposes and intentions in the transaction? I am unable to give any other reasonable construction to the recitals of the deed which I have set out than that the parties meant by those terms to express this idea that the easement should continue to exist only for the purpose of a railroad to be actually constructed, and only in the event the railroad then contemplated should be built and operated.

"It is true that it has been frequently said by the courts that conditions subsequent, like forfeitures, are not favored. And the reason given is that they tend to destroy the estate granted, and in many instances, when rigorously exacted, work hardships scarcely reconcilable with good conscience. This would undoubtedly be true in those cases when the grantee or beneficiary had parted with a valuable consideration for the grant. In many cases the forfeiture would work a hardship. In such cases no doubt a court will not act to the detriment or hardship of a grantee until the court's duty to do so is clear. But when the conveyance is purely voluntary, and no detriment to the grantee appears, and the whole purpose of the grant has failed, and, instead of a benefit to the grantor, there is a positive detriment to him, there would seem to be nothing to cause

the court to hesitate for fear of injuring the grantee. In such case the whole reason of the rule fails, and I apprehend the principle announced by Chancellor Kent, and so often quoted by courts, would prevail, namely: That the intention of the party to the instrument, when clearly ascertained, is of controlling efficacy. But, when that is not clearly manifest, the construction to be given to the deed will after all depend less upon artificial rules than upon the application of sense and sound equity to the object and spirit of the contract in the given case.—4 Kent, 125.

"This is really not so much a rule of construction as a mere declaration of policy that the court will not enforce a hard bargain so long as it is not clearly its duty to do so, and, on the other hand, that it is inclined to do what justice and good conscience require, unless its duty to the contrary is clear; the two propositions being identical. Courts have no antipathy to conditions subsequent, except in those cases where substantial justice can be accomplished in some other way, and the enforcement of them would be inequitable.

"At one time it seemed to be supposed that some special form of condition or a clause for re-entry was essential to the creation of a condition subsequent. I apprehend that the modern trend of the decisions is that no form of expression is essential so long as the expression used discloses that thereby the grantor and grantee meant that in a certain contingency the estate or right granted should cease to exist. It has been held that a conveyance for a certain purpose created a condition subsequent, without other expressions declaring a forfeiture, and without a provision for re-entry. A contemporaneous agreement executed separately by the grantee containing pure covenants and no express conditions has been construed as being a condition subse-

quent.—*Glocke v. Glocke*, 113 Wis. 303, 89 N. W. 118, 57 L. R. A. 458, and cases cited therein.

"This is no doubt an extreme case, but is illustrative of the freedom of construction which courts sometimes allow themselves in order to do justice. In this con nection a recent declaration of Justice Holmes is appropriate, namely: That it is 'one of the misfortunes of the law that legal principles become encysted in phrases which, from constant repetition, fail to provide further analysis.'

"There is a perfect wilderness of precedent on the subject of conditions subsequent as distinguished from covenants and restrictive clauses. In many cases the courts have apparently accepted, without 'further analysis' or consideration, the doctrine that conditions subsequent are not favored, and in cases of difficult construction denied the condition on this principle, and 'let it go at that.'

"But there is no just reason so far as I can see why the maxim, 'Ratione cessante, lex cessante,' should not apply to the declared doctrine respecting condition subsequent. The attitude of the court ought to be that it will seek to find the intent of the parties, and to determine whether or not it has found expression in the written evidence of the contract with this mental reservation, that when asked to render a judgment which will work a hardship or an abstract injustice, it 'will have to be shown.' This, I think, is the principle on which the courts have acted in cases involving the doctrine now under discussion, when the courts have stopped to give the principle consideration and 'further analysis.'

"The grantor in the present deed did not content itself with a mere conveyance of a right of way in the set form or phraseology commonly used in deeds. It added that the conveyance of the right of way was in consid-

eration of a railroad then contemplated, the route and plan of which were definitely known. Some purpose was necessarily in view when these expressions were put in the deed. They were not in the slightest degree essential to the efficacy of the conveyance. They were put in for the benefit of the grantee. They do not purport to recite an express agreement by the grantee to build a railroad, and it is not reasonable to think that either party understood that the railroad company was actually obligating itself to build the road. I imagine the railway company would be very much surprised to learn that it had bound itself by accepting this deed to build the contemplated railroad, regardless of all obstacles, regardless of the inability to make all necessary arrangements.

"Even granting the existence of a covenant, a stipulation may be both a covenant and a condition, and a grantor often has the election to treat it as the one or the other. Likewise to hold that the above-quoted recitals were intended merely as restrictions, that is, to prevent the use of the right of way for other purposes than the contemplated railroad, ignores the statement that the consideration was 'the benefits to be derived from the construction of the road.' It is perfectly plain that the statements were not put in the deed with the intent only of preventing the use of the right of way for other purposes than the contemplated railroad, which is the only effect it would have if construed as a mere restriction, but that there was the further intent to procure the building of said contemplated road. If the contemplated road should not be built, and if there should be no power to compel its building, and no practical means of getting the equivalent, and if we assume that the parties actually contemplated the existence of such consequences, what did they mean by saying that

the grant was made in consideration of the benfiets which would result from the building of the road? Did the grantor not mean to say, 'I convey this right of way upon the understanding that you build your road which you now contemplate building'? And would the intent be any more certain if it had said, 'I grant this right of way *on condition,* or if you will build your contemplated road'? I confess that I am unable to give their words any other plausible effect, if this is too strong. I feel reasonably sure that the grantor meant by the quoted words to express the intent that the grant should continue to exist only for the purpose of constructing the particular road in contemplation, and only in the event the road as contemplated should be built, and therefore with the necessary consequence that upon a failure of the purpose the grant itself should fail. It was not requisite that the consequence be expressed, because, if I have correctly interpreted the intent and meaning of the parties, the result would necessarily follow.

"It never was regarded by the courts as absolutely necessary that there should be an express declaration of forfeiture or of right of re-entry, if the condition itself was made sufficiently manifest. The necessary consequence is implied. There is one other matter which needs consideration, and that is whether the condition has happened. On the argument, and before the last amendment, it was contended by complainant's counsel that, no time having been specified as to the building of the railroad, the law required the building of the road to be done within a reasonable time. What is a reasonable time is a question of law and fact, and would vary with the difference in the character of the acts to be done.— *Murrel v. Whiting,* 32 Ala. 54; 23 A. & E. Enc. of Law, 585.

18—186

[Seaboard A. L. Ry. Co., et al. v. Anniston Manufacturing Co.]

"Reasonableness of the time necessary to build a railroad would certainly be a question largely of fact, and it would vary with the kind of road and the circumstances under which the parties contracted. I think in this case, however, that the parties undoubtedly had in mind the road and the limit of time fixed in the ordinances of the city. These ordinances antedated the deed in question. The conveyance was to further the building of the road then contemplated, and it appears that, under conditions then existing, the road would necessarily have to be built within three years from the 1st of July, 1906. But in any event, under averments of the bill, if a condition subsequent existed, the performance or nonperformance or the arrival of the time limit would be a question of fact, not affecting the equity of the bill. Numerous authorities have been consulted, some of which are contained in a memorandum in the file."

W. C. TUNSTALL, JR., and JOHN P. TILLMAN, for appellant. The court below erred in overruling the demurrers to the bill of complaint as last amended.— *Knight v. Gardner,* 124 Ala. 273; *Elyton Land Co. v. L. & N.,* 100 Ala. 396; *P. L. I. Co. v. P. F. & M. Co.,* 96 Ala. 389; *Zimmerman v. Daffin,* 149 Ala. 380; *Vizzard v. Robinson,* in MSS.; *Shreve v. N. & W. R. R. Co.,* 23 L. R. A. (N. S.) 771; *Hawley v. Kafitz,* 3 L. R. A. (N. S.) 741; *St. Peters Church v. Bragaw,* 10 L. R. A. (N. S.) 633; *Bradley v. Elliott,* 16 L. R. A. (N. S.) 1121; *Post v. Weil,* 12 A. S. R. 809; *Raley Johns v. Umatilla County,* 3 A. S. T. 142; *Framham v. Thompson,* 57 A. R. 59 and note; *Faith v. Bowles,* 63 A. S. R. 498 and note; *Rawson v. School District,* 83 A. D. 670; 13 Cyc. 684, 689 and 690; *Ecroyd v. Coggisball,* 79 A. S. R. 741 and note; *Los Angeles v. Smith,* 107 Fed. 798; *Union*

[Seaboard A. L. Ry. Co., et al. v. Anniston Manufacturing Co.]

*Stock Yds. v. Nashville Packing Co.*, 140 F. 701; *Avery v. U. S.*, 104 F. 711; *Incorporated Village of Ashland v. Griener*, 50 N. E. 99 (58 Ohio S. 67).

WILLETT & WILLETT, for appellee. The chancellor has prepared a conclusive opinion in which he struck the keynote both as to the facts of the case and the construction of the law applicable thereto, and the authorities therein cited are referred to as conclusive of the propositions asserted by appellant.

GARDNER, J.—The learned chancellor (judge of the city court of Anniston) has written a very carefully prepared opinion in this case, which is found on page 26 et seq. of the transcript. We agree with the conclusion of law as therein expressed as applicable to this case, and the reporter will set out the opinion of the chancellor, above referred to, in his report of this case.

We think it well, however, to direct attention to a few additional authorities in support of the conclusion reached, as well as to make reference to some of those cited by counsel for appellant, noting some points of difference between them and the instant case.

The following propositions are well settled by the authorities: That no precise or technical words are required in a deed to create a condition subsequent; that conditions subsequent are not favored in the law, and are strictly construed, as they tend to the destruction of estates, and in many instances, "when rigorously exacted, work hardship scarcely reconcilable with good conscience"; and, when there remains a doubt whether the clause in a deed be a covenant or a condition, the court will incline against the latter preferring the former.—*Elyton Land Co. v. South & North Ala. R. R. Co.*, 100 Ala. 396, 14 South. 207; *C. M. Zimmerman Mfg. Co.*

*v. Daffin,* 149 Ala. 380, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58.

It is, however, equally well settled by these authorities above cited that whether the language in the deed be a covenant or a condition is a matter of construction, dependent upon the contract, the language employed in the instrument, the circumstances under which the contract was made, the relative position of the parties, and the purpose and object designed to be accomplished. The intention of the parties to the instrument, when clearly ascertained, is of controlling efficacy. We add the cases of *Gibbs v. Wright,* 5 Ala. App. 486, 57 South. 258; *Davis v. Memphis & Charleston R. R. Co.,* 87 Ala. 633, 6 South. 140; *McMahon v. Williams,* 79 Ala. 288.

It is also recognized in cases of this character that the fact that the grantee cannot be placed in statu quo is an important factor in determining the question of forfeiture.—13 Cyc. 701.

As the courts lean against conditions subsequent because they work a destruction of estates, so, if the grantor have other adequate remedy, either at law as by suit on the covenant, or in equity for enforcement of vendor's lien or specific performance, or by injunctive relief restraining the use of the property beyond the limitation or restriction, a forfeiture will not be declared.

Many authorities are cited in note to the case of *Ecroyd v. Coggeshall,* 21 R. I. 1, 41 Atl. 260, 79 Am. St. Rep. 741, and in note to the case of *Hawley v. Kafitz,* 3 L. R. A. (N. S.) 741, and in notes to numerous other cases, a review of which is impracticable here. We cite, also, *Berkley v. Union Pacific R. R. Co.* (C. C.) 33 Fed. 794; *Langley v. Chapin,* 134 Mass. 82. We will make mention of a few of those relied upon by counsel for appellant in brief.

We are cited to the case of *St. Peters Church v. Bragaw,* 144 N. C. 126, 56 S. E. 688, 10 L. R. A. (N. S.) 633;

but in that case it was held that the clause in the deed
against the use of the premises as a cemetery would
bind the grantee and be enforced in equity, and thus
there would be no interest that would not be adequately
protected by regarding the clause as a limitation as to
the use of the property. The opinion makes use of the
following quotation: "If we can contsrue this clause as
an obligation to abstain from doing the thing describ-
ed, which, by acceptance of the deed, became binding
upon the grantee as an agreement enforceable in behalf
of any interest entitled to invoke its protection, I think
we are in conscience bound to give that construction,
and thereby place ourselves in accord with that inclina-
tion of the law, which regards with disfavor conditions
involving the forfeiture of estates."

In the case of *Hawley v. Kafitz,* 148 Cal. 393, 83 Pac.
248, 3 L. R. A. (N. S.) 741, 113 Am. St. Rep. 282, there
had been paid a part of the consideration, and the opin-
ion states that it does not appear that any *specified*
purpose was to be attained by the *grantor* in having the
building erected on the lot, or that its erection was the
*sole* consideration.

In the case of *Shreve v. Norfolk & Western R. R. Co.,*
109 Va. 706, 64 S. E. 972, 23 L. R. A. (N. S.) 771, it ap-
pears that upon the lots the company had erected a
section house and switchings and sidings, that it had
never refused to build the depot, but had repeatedly
stated it would do so as soon as business at that point
would justify it, no time being fixed in the deed for the
erection of the depot; and the opinion further, states
that the conduct of the grantor in the execution of other
conveyances indicated that he considered the language
in the deed as a covenant.

In the case of *Rawson v. School District No. 5,* 7 Al-
len (Mass.) 125, 83 Am. Dec. 670, often cited, the deed

expressed the grant to the town "for a burying place forever." It does not appear that this specific use would inure *specially* to the benefit of the grantor, and the opinion states that it cannot be said that the *sole cause* or *consideration* which induced the grantor to convey the estate to the town was that it should be used for the specific purpose designated.

Turning to our own authorities, relied upon by counsel in brief, it will be noted that in the case of *Elyton Land Co. v. South & North Ala. R. R. Co., supra,* the railroad had been built on the land, and the parties could not be placed in statu quo, and, as it appeared the grantor desired the building of the road so as to enhance in value its property, it was unreasonable to suppose a forfeiture of the estate was contemplated by the parties. Such a result would have worked a great hardship, not "reconcilable with good conscience," and this of itself might tend at least to a refutation of the idea that a forfeiture was intended.

The case of *Piedmont Land & Improvement Co. v. Piedmont Foundry & Machine Co.,* 96 Ala. 389, 11 South. 332, expressly states that, if a rescission should be decreed, it would not be practicable for the parties to be placed in the situation they occupied when the contract was made. Furthermore, it appears that the bill was filed for *rescission* of the contract, based upon a fraudulent promise of the grantee, or upon its mere failure to comply with the promise as to the operation of its work. The opinion does not discuss the question of conditions subsequent, and can be of no material aid to us here.

In the case of *Zimmerman Manufacturing Co. v. Daffin, supra,* it is noted that the entire consideration and full value for the trees had been paid. There are, however, no points of similarity between that case and the one here under consideration.

In the case of *Gardner v. Knight,* 124 Ala. 273, 27 South. 298, it is shown that the deed was made by the father to Lucy Knight, his daughter, and that the grantor reserved a life estate, and accepted, as part at least of the consideration, the written obligation of J. C. Knight to provide for him. The opinion states that the ·grantor received from J. C. Knight "his legal and binding obligation to provide for him, and this was the consideration for which he conveyed the land—this was what he stipulated for in the instrument." The grantor, therefore, accepted the "legal and binding obligation" for support of a third person, not the grantee, and, as the opinion says, "this was what he stipulated for in the instrument."

In the case of *Brown v. Chicago & N. W. R. R. Co.* (Iowa) 82 N. W. 1003, it would seem that the decision was to a considerable extent influenced by the fact that there was no obligation imposed upon the grantee by the instrument; the court regarding the absence of such obligation inconsistent with the view that the provision in question created a covenant merely.

In the instant case it is clear there is an absence of any *legal* and *binding obligation* on the part of the grantee created by this deed. The grantor could not obtain relief by way of specific performance.—*Electric Lighting Co. v. Mobile St. Ry.,* 109 Ala. 190, 19 South. 721, 55 Am. St. Rep. 927; *Iron Age Pub. Co. v. Western Union Telegraph Co.,* 83 Ala. 498, 3 South. 296, 3 Am. St. Rep. 702; *Tex. & Pac. Ry. Co. v. Marshall,* 136 U. S. 394, 10 Sup. Ct. 846, 34 L. Ed. 385.

*Here* the sole consideration for the deed was the benefits to be derived from the building of the road, and which benefits were especially intended, so far as this deed was concerned, to inure to the grantor only. Here we have no legal and binding obligation of the grantee which can be enforced in equity.

That a suit at law for damages as for a breach of a covenant, from the averments of the amended bill, would be a wholly inadequate remedy, we entertain no doubt.—*M. & M. Ry. Co. v. Gilmer*, 85 Ala. 422, 5 South. 138. The parties may be placed in statu quo. There has been no change to the injury of the grantee.

To use the language found in the opinion of the chancellor: "If the right of way shall remain intact forever, though no railroad be constructed, the complainant has parted with its property for a definite purpose of benefit to itself, which purpose it has no power to accomplish or compel, and there is no other benefit of any equivalent value to be derived from the conveyance, but on the other hand, a positive and serious detriment, or at least the continuous possibility of the same."

Of course what is here said must not be understood as indicating a view that, because the grantor would thus be left without any adequate remedy, it would of consequence be entitled to the relief sought, for principles of law are not to be declared on the doctrine ab inconvenienti, but merely as indicating that the fact that the grantor has thus voluntarily placed itself in such situation is at least worthy of some consideration in determining the *intention* of the party at the time of the execution of the conveyance, when considered in the light of "the application of good sense and sound equity to the object and spirit of the contract in the given case."

Upon consideration of the averments of the bill as amended, showing the contract made, the language used in the instrument as indicating the sole consideration to be the benefits to be derived from the building of the road then in contemplation, the relative position of the parties, the circumstances under which the deed was executed, and the object and purpose designed to be ac-

[Seaboard A. L. Ry. Co., et al. v. Anniston Manufacturing Co.]

complished, we are persuaded that the bill has equity, and that it is sufficient as against the attack here made.

After a careful investigation of the authorities, we find none which, in our opinion, militate against the conclusion here reached. We also agree with the opinion that, no time having been fixed by the deed, the road was to be built within a reasonable time (*Murrell v. Whiting*, 32 Ala. 54; 23 Am. & Eng. Ency. Law, 585), and that the reasonableness of the time necessary to build the railroad would necessarily be largely a question of fact. We are also of the opinion, in view of the fact that the contract was made in the light of the ordinances and franchises of the city of Anniston, that, under the averments of the bill as amended, the time fixed for the expiration of such franchise would be at least prima facie the reasonable time here intended by the law, although of course not conclusive thereof. Under the averments of the bill, this is a question of fact, not affecting the equity of the bill.

One of the assignments of demurrer takes the point that the Atlanta & Birmingham Air Line Railway is improperly joined as a party respondent. This appeal is by the respondent Seaboard Air Line Railway, and the respondent Atlanta & Birmingham Air Line Railway is not a party to this appeal. As a misjoinder could be taken advantage of only by the latter, it results that this appellant can take nothing by this assignment under our authorities.—*Worthington v. Miller*, 134 Ala. 420, 32 South. 748.

We conclude that the chancellor correctly ruled, and his decree overruling the demurrer to the bill as amended is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.