(79 South. 134)

· WOODLEY v. WOODLEY. (6 Div. 577.)

(Supreme Court of Alabama. June 28, 1917. Rehearing Denied. March 23, 1918.)

1. EQUITY ☞148(3)— BILL—"MULTIFARIOUSNESS."

A bill praying cancellation of a deed given by a father to his son in consideration that the father should receive one-fourth of the crops for life and, as alternative relief, that a lien on the property for the value of one-fourth of the crops be declared and enforced, is not demurrable on the ground of multifariousness under Code, § 3095, providing that a bill is not multifarious which seeks alternative or inconsistent relief growing out of the same subject-matter or founded on the same contract or transaction, or relating to the same property between the same parties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Multifariousness.]

2. DEEDS ☞145—CONSTRUCTION—ESTATES ON CONDITION SUBSEQUENT.

Where a father conveyed land to his son in consideration of $1 and one-fourth of the crops during the grantor's life, taking a mortgage back, the legal title under the deed was revested in the grantor by the mortgage, and since the two instruments must be construed together, the grantee's promise to cultivate the land in a husbandly manner being implied, they created in the son an estate upon condition subsequent and not a personal covenant that he should perform the stipulations of the mortgage; the intent of the grantor being to have his land or the performance of the stipulations for which he conveyed it.

3. DEEDS ☞165—CONDITIONS SUBSEQUENT— FORECLOSURE OF MORTGAGE — EFFECT OF SALE.

Where a father conveyed land to his son in consideration of one-fourth of the crop for life, an attempted foreclosure of the mortgage securing the consideration at the sale under which the son purchased the property, while satisfying the mortgage, did not terminate the father's interest, although the breach of the conditions therein did not revest an unincumbered title in him.

Anderson, C. J., and McClellan and Mayfield, JJ., dissenting.

Appeal from Circuit Court, Cullman County; James E. Horton, Jr., Judge.

Suit by F. M. Woodley against S. Z. Woodley to cancel a deed with cross-bill by respondent. From a decree for respondent, complainant appeals. Reversed and remanded, and rehearing denied.

F. E. St. John, of Cullman, for appellant. W. E. James, of Cullman, for appellee.

SAYRE, J. Complainant, appellant, filed this bill May 30, 1916, praying that a certain conveyance of land which he had theretofore made to defendant be canceled and annulled. It was averred in the bill that defendant, complainant's son, induced complainant, who was very old and feeble in mind and body, to execute the deed by "telling the complainant that if he would do so the defendant would give the complainant one-fourth of all the defendant made as long as the complainant and his wife should live; that after repeated persuasions the complainant and his wife were finally induced by the defendant to make said deed; that the defendant went and employed a justice of the peace to draw said deed and dictated to said justice of the peace how the same should be drawn; that the defendant dictated to said justice of the peace what purported to be a mortgage on said lands, but there is no amount or consideration expressed in said mortgage, and complainant avers that he has been informed that said mortgage is void and incapable of being enforced; * * * that the defendant is now in possession of the said lands under said deed, and enjoying the rents and profits of the same to the exclusion of the complainant." The prayer of the bill was that a decree be granted "canceling and annulling the said deed from complainant to the respondent * * * on account of undue influence as averred in said bill, and for other relief, general and special, as may be agreeable to equity and good conscience." To his answer and cross-bill, praying that the mortgage be canceled as satisfied in full, defendant attached a copy of the mortgage averring "that the consideration of said deed was one-fourth of the crops grown by defendant on said land which was, together with $1, the consideration expressed in the mortgage

executed by defendant to complainant;" that, though he had diligently complied with the terms of the contract thereby shown, complainant had advertised and sold the land under the power contained in the mortgage; that he (defendant) had bought the land at the sale for the sum of $800, and "that after said sale defendant tendered complainant the amount due on said mortgage amounting to $2.33 (which he piously calculated as follows: $1.21 for the mortgage debt and interest on the same, 12 cents as an attorney's fee, and $1 for recording the mortgage); and that he was still ready to pay complainant said amount, if the court should find it due, and paid said amount into court by way of keeping his tender good. The mortgage recited the consideration upon which it was executed as follows:

"That for and in consideration of S. Z. Woodley and wife, E. H. Woodley, the grantors in this conveyance, being indebted to E. H. Woodley and wife, E. R. Woodley, the grantees herein, in the sum of $1 and one-fourth of all crops raised on said land as long as the grantees live, and at the death of the grantees this mortgage becomes null and void," etc.

[1] After the evidence had been taken complainant amended his bill by the addition of a prayer for alternative relief, and to the bill as so amended defendant demurred on the ground that the relief prayed by the amendment was inconsistent, repugnant, and wholly indifferent from the relief prayed in the original bill, and that the bill as amended was multifarious. In the view we take of the case the amendment was of no consequence. The demurrer may be sufficiently answered by reference to the language of section 3095 of the Code which provides (inter alia) that:

"A bill is not multifariousness which seeks alternative or inconsistent relief growing out of the same subject-matter or founded on the same contract or transaction, or relating to the same property between the same parties."

See, also, Lyons v. McCurdy, 90 Ala. 497, 8 South. 52. The evidence went to prove that in 1915 defendant planted crops of corn, wheat, and peas (of trifling value evidently) on the land in question, but planted no cotton, assigning as his reason for so doing that complainant would not help to pay for the guano, and saying that he had a deed and that his father could get only a fourth if he raised nothing but grass. What happened in 1916 will be stated below.

The case presented is analogous to cases, of frequent occurrence in the books, in which conveyances are made upon consideration of the grantee's undertaking to maintain and support the grantor. In Brindley v. Brindley, 197 Ala. 221, 72 South. 497, it was said that the courts very generally have found a way in such cases to give relief to the grantor who complains and proves that his grantees have failed or refused to carry out his undertaking, citing Davis v. Davis, 81 Vt. 259, 69 Atl. 876, 130 Am. St. Rep. note on page 1040 et seq.; 6 Pom. Eq. Jur. § 686, note.

In Gardner v. Knight, 124 Ala. 273, 27 South. 298, the recited consideration of the deed was the sum of $5 presently paid, love and affection, and the promise of a stranger to the deed to provide for the sustenance and support of the grantor and to make specified repairs and improvements upon the property conveyed. Complainant sought to cancel the deed upon the grounds that the only consideration for the deed was the grantee's undertaking to provide for the sustenance and support of the grantor and to make the specified repairs and improvements, and the grantee's total failure to perform. The opinion treated these promises as the only consideration. It was held that the grantor could not maintain a bill to cancel the deed on the ground that the grantee had failed to carry out his undertaking; that the remedy was on the undertaking and not by way of cancellation.

In Burroughs v. Burroughs, 164 Ala. 329, 50 South. 1025, 137 Am. St. Rep. 59, 20 Ann. Cas. 926, the deed recited a consideration of $150; but the bill to enforce an alleged vendor's lien averred that the real consideration for the deed was the grantee's promise to maintain and support the grantor or furnish a reasonable amount for her support during the remainder of her life. It was held that complainant's remedy was on the undertaking; that no vendor's lien could be declared for an uncertain, indefinite, contingent demand.

[2] Here the case is different. The legal title which passed by grantor's deed was revested in him by the mortgage executed by the grantee to secure the performance of his promise to give the grantor one-fourth of the crops during his life and the further promise, of necessary implication, that in order to be able to give one-fourth crops would be planted from year to year and cultivated in a reasonably husbandly manner. We say such further promise must be implied, for otherwise the contract would be utterly ineffectual to secure the consideration on which complainant parted with his property and for the security of which he exacted the so-called mortgage. The deed and the alleged mortgage together witness the transaction between the parties, and these instruments relating to the same subject-matter and executed concurrently as parts of the same transaction are to be construed together. Considering the two instruments as one, the law applies itself to the intention to be gathered from the language of the whole instrument. Observing as did the Supreme Court of Indiana in the similar case of Richter v. Richter, 111 Ind. 460, 12 N. E. 698, that if the so-called mortgage can only be treated as creating a personal covenant to perform the stipulations therein contained it is practically inoperative as a security, we quote from that case as follows:

"If from the nature of the acts to be performed by the grantee, and the time required for their performance, it is evidently the intention of the parties that the estate shall be held and enjoyed on condition that the grantee perform the acts specified, then the estate is upon condition. This is especially so when the grantor has reserved no other effectual remedy for the enforcement of the performance on the part of the grantee. In such case a condition subsequent arises by clear implication. 2 Washb. Real Prop. 7."

According full consideration to the rule that condition subsequent, going to the destruction or defeasance of estates created, are not favored, we are nevertheless of the opinion that the two instruments in question, taken together, created an estate in the defendant upon the condition subsequent that he should perform the stipulations of the mortgage, and this conclusion as to the substantial effect of the two instruments is not impaired by their strict legal operation, for the transaction evidenced by them shows that the intent of the grantor in the deed was to have his land or the performance of the stipulations in consideration of which he executed the deed. Bethea v. McCullough, 195 Ala. 480, 70 South. 680. At page 1046 of 130 Am. St. Rep., in the note to Davis v. Davis, many cases are cited from the leading courts of this country to the proposition that agreements of the sort here shown will be treated as conditions subsequent.

The principle of the decision in our recent case of Seaboard Air Line v. Anniston Mfg. Co., 186 Ala. 264, 65 South. 187, is, we think, identical with that involved in the case here before us. In that case the complainant (appellee) executed a deed of a right of way to the defendant upon the nominal pecuniary consideration of $1 and the further consideration of the benefits to be derived by complainant from the construction and operation of defendant's railroad then in contemplation. The railroad was never built. This court, treating the benefits to be. derived from the building of the road as the sole consideration for the deed, noting that a suit at law for damages would be wholly inadequate as a remedy, and determining the intention of the parties upon what it considered to be the application of good sense and sound equity to the object and spirit of the contract, affirmed a decree which had declared, in effect, the building of the railroad within a reasonable time to be a condition subsequent and a forfeiture for the failure so to build.

[3] It appears very satisfactorily that complainant was not induced to execute the deed to defendant by the exercise of any undue influence, and so he cannot have relief on the specific ground set forth in his original bill. But it appears also that defendant has failed and refused to carry out his contract. He refused to pay his father anything from the crops for the year 1916, assigning as his reason for so doing that complainant's effort to foreclose the mortgage and his own purchase at the foreclosure sale had terminated complainant's interest in the property. The breach did not operate, ipso facto, to revest an unincumbered title in complainant. The foreclosure may have served the purpose of a declaration of forfeiture, if that were necessary, but otherwise, as a means of practical relief to complainant, it was wholly and obviously abortive. The nature of the contract was such that on its face a foreclosure could afford no relief; could make no amends for the breach already suffered; could not assure future performance. Upon this status and effect of the mortgage security we have in part based our conclusion that in the particular circumstances of this case defendant took an estate upon condition subsequent. But the foreclosure operated a satisfaction of the mortgage. Jackson v. Tribble, 156 Ala. 480, 47 South. 310. Such being the case, no reason is perceived why equity should not establish the title in accordance with the facts, clear away all apparently interfering writings, and give such relief as may be necessary to the ends of justice. Davis v. Davis, supra. The relief of rescission and cancellation thus administered is not wholly different from, nor repugnant to, the relief specifically prayed, and being justified by the facts alleged and proved, may be had under the general prayer for relief.

The decree of the court below will be reversed and the cause will be remanded, with directions to enter and superintend the execution of a decree rescinding the contract between the parties for the conveyance of the land in question, canceling and annulling the deed and mortgage referred to in the pleadings, and restoring complainant to the possession of the land in controversy. Defendant (appellee) will be taxed with the costs in this court and in the court below.

Reversed and remanded.

### On Rehearing.

Application overruled.

SOMERVILLE, GARDNER, and THOMAS, JJ., concur.

McCLELLAN, J. (dissenting), with whom ANDERSON, C. J., and MAYFIELD, J., concur. It is the writer's opinion that the decree of the chancellor was well rendered, both in its conclusions of fact and the application of well-settled legal principles thereto. As the writer understands the facts disclosed by the record, the reversal of the decree results in the decision of a case not presented by the record. The material facts of the case as disclosed by the record are these:

On October 24, 1913, E. M. Woodley (complainant-appellant) owned the 40 acres of land described in the bill. He conveyed this

land to his son, the defendant-appellee, and at the same time the defendant-appellee executed to the complainant-appellant a mortgage on the land therein conveyed in which it was recited:

"* * * That for and in consideration of S. Z. Woodley and wife, E. H. Woodley, the grantors in this conveyance, being indebted to E. M. Woodley and wife, E. R. Woodley, the grantees herein in the sum of $1 and one one-fourth of all crops raised on said land as long as the grantees live, and at the death of the grantees this mortgage becomes null and void, this mortgage becomes the property of S. Z. Woodley, * * * and for the purpose of securing the payment of the same," the land in question (and no other) was subjected to a mortgage to the grantors in the deed.

The mortgage also conferred upon the complainant-appellant the power of sale in the event of default in the payment of "said rent." The mortgage was filed for record in the probate office on May 30, 1914. Both the deed and mortgage were drawn by a justice of the peace. The original bill was filed May 30, 1916, and the cancellation of the deed was prayed on the specific ground that its execution was procured by undue influence exerted by the son upon the father, grantor. There was a general prayer for relief. On December 14, 1916, the original bill was amended by the addition of this to the prayer:

"In the event the complainant is mistaken in the relief hereinbefore prayed for as to the cancellation of the deed mentioned in the bill complainant prays that a lien be declared in favor of the complainant upon the land described in the bill for the value of the one-fourth of the crops grown upon said lands, or which said lands would reasonably produce if properly cultivated, and that upon the failure of the respondent to pay the amount of one-fourth of said crops, that said lands be sold for the purpose of satisfying the same, and that it be referred to the register to ascertain and report to this court the value of the one-fourth of what said lands would produce as aforesaid, and complainant prays for general relief."

The defendant-appellee filed an answer and cross-bill; but the final decree, from which the appeal is prosecuted, only concluded against the complainant-appellant, awarding no relief to the defendant-appellee on his cross-bill. The evidence entirely failed to sustain the charge that the deed was procured by undue influence. If it was the purpose of the amended prayer to impose a lien on the land by implication, that could not prevail, for this conclusive reason, among others, a mortgage, a contract lien, was taken by the complainant from the defendant to secure the performance by the defendant of the contract recited in the mortgage, quoted above, thus excluding the possibility of the lien by implication or otherwise. Fields v. Drennen, 115 Ala. 558, 22 South. 114; Campbell v. Goldthwaite, 189 Ala. 1–7, 66 South. 483.

Under the general prayer, a majority of the court grants relief to the complainant-appellant upon the ground that, according to the contract between these parties, the title to the land revested in the complainant-appellant under the operation of the intervention of a condition subsequent, and so in consequence of the conclusion of fact that the defendant-appellee had engaged to support the grantors in the deed during their lives. There is nothing in the conveyance or in the mortgage or in the evidence in the record to suggest, even, that the defendant-appellee engaged to support the grantors (complainant-appellant and his wife), or either, during their lives, or for any other period. As the quoted recital from the mortgage shows, the entire obligation of this grantee-mortgagor was to pay $1 and the promise to give the grantors "one-fourth of all crops raised" on the lands described in the deed and in the mortgage. That was the only consideration for the deed. There was no promise of or obligation assumed by the grantee-mortgagor to raise any particular kind of crops on the lands described in these instruments. He did not engage to raise cotton on the land. His duty under his promise was to raise crops, and his promise would have been and was discharged by raising any or all of the crops usually grown in that section. Not only did the deed and the mortgage disclose a common intent opposed to the assumption of an obligation to support the grantors during their lives, but also the complainant himself testified that he was the owner of 127 acres of land besides the 40 acres here in question. Furthermore, there is in the record no suggestion whatever that either of these parties intended the creation of a condition subsequent which would work the forfeiture or reinvestment of the title granted if the grantee-mortgagor should not raise crops on the land in accordance with his promise as set forth in the mortgage. In Zimmerman v. Daffin, 149 Ala. p. 388, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, decided 11 years ago this was approvingly quoted from 2 Devlin on Deeds, § 970:

"A deed will not be construed to create an estate on condition, unless language is used which, according to the rules of law, ex proprio vigore, imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. Conditions are not to be raised readily by inference or argument."

The same doctrine was announced in Elyton Land Co. v. Railroad Co., 100 Ala. 396, 405, 406, 14 South. 207, decided more than 20 years ago, and in Vizard v. Robinson, 181 Ala. 349, 357, 358, 61 South. 959. The doctrine of these decisions concludes expressly against the creation of conditions subsequent by parol or by implication. The application of this long-established doctrine to the contract under consideration requires the conclusion that the parties thereto never contemplated or intended the creation of a condition subsequent, much less stipulated therefor in any form or degree satisfactory to the quoted rule prevailing in Alabama. The

complainant-appellant owned the land. He sold and conveyed it for a specified consideration of $1 and the grantee's promise to give one-fourth of all the crops raised on the land described in the conveyance so long as the grantors should live. The grantee in the conveyance gave the grantors a mortgage on the land to secure the performance of the stated promise on the part of the grantee-mortgagor. The means, measure, and effect of this contract between these parties manifested, unmistakably, a purpose on their part in obvious opposition to the theory that they, or either of them, intended the creation of a condition subsequent in the premises. If, however, it should be assumed, notwithstanding the record, that a condition subsequent was efficiently created within the doctrine of the cases above noted, the undisputed evidence, including that of the complainant-appellant himself, affirmatively showed that the grantee-mortgagor raised crops on the land in question during the crop years 1914 and 1915, and that during these years the complainant-appellant received a part of these crops, thereby conclusively negativing any breach of a condition subsequent predicated of a failure or refusal on the part of the grantee-mortgagor to raise crops on the land, for the years 1914 and 1915. The defendant-mortgagor testified that during the years 1914 and 1915 he gave the complainant-mortgagee the crops that were his due. He testified:

"I paid him the rents on the land two years. The first year I paid him two bales of cotton and the seed out of them and some hay, anyhow 75 bushels of corn. I made an estimation of it at that time at prices then and it was from $100 to $150. The second year, 1915, there was about 75 bushels of corn again, a ton and a half or 2 tons of hay, 50 some odd bushels of wheat, a few peas, but don't remember how many. Several baskets of peas. He helped divide the velvet beans and my part was 780 pounds and he got his fourth. Last year's part I gave him came to over $100. I have paid him from $200 to $250 or more on the land."

The complainant himself testified:

"My son [defendant-mortgagor] paid rent on the lands for 1914 and 1915 * * * and I foreclosed the mortgage before any crop was made in 1916."

The complainant, as this quotation from his testimony discloses, foreclosed the mortgage by a sale under the power on May 25, 1916. At this sale the defendant-mortgagor bid the sum of $700. A mortgagor may purchase at a sale under his own mortgage, provided there is no outstanding subsequent incumbrance he is obliged to satisfy. 3 Jones on Mort. (7th Ed.) § 1887. Having given the complainant-mortgagee his part of the crops for the years 1914 and 1915, and the sale under the power having been had by the complainant-mortgagee before the 1916 crop was made, it readily appears why the defendant-mortgagor testified as follows:

"There was $1 due on the mortgage which was the consideration that I had never paid. Outside of that it was all paid at that time. I made him a tender of $1 with 8 per cent. interest on it, amounting to $1.21 on the 25th of May last [1916]. I tendered him 10 per cent. of that amount for attorney's fee, which was 12 cents more. I offered him $1 to pay the recording fee of the mortgage. He refused to take it. I asked him if there was anything else due on the place and he said 'No.'"

If the defendant-mortgagor was mistaken in the amount he should have tendered under his bid ($700) at the foreclosure sale, surely that fact does not justify the imposition of a penalty upon him nor work the forfeiture of any substantial right either one of the parties had. The defendant-mortgagor's bid fastened upon him the obligation to pay the complainant-mortgagee the amount of the bid, because, as stated in the majority opinion, "the foreclosure operated a satisfaction of the mortgage" (Jackson v. Tribble, 156 Ala. 480, 47 South. 310), and of course there could be no foreclosure unless there was a purchaser—in this instance the mortgagor—at the bid sum of $700.

The conclusion of the majority of the court seems to be rested upon the decisions to be now briefly noticed. Brindley v. Brindley, 197 Ala. 221, 72 South. 497. The opinion in which the court concurred in this case lends no support to the conclusion prevailing in the case at bar. The statement in the report of that case that the courts have generally found a way to relieve where the undertaking is to maintain and support the grantor was the view of the writer only; the concurrence being so limited as to exclude approval of that individual expression of the author of the opinion. Richter v. Richter, 111 Ind. 456, 12 N. E. 698. There the writing did expressly provide for the maintenance and support of Henry G. Richter. This case should not be accorded influence in the present circumstances, for the simple reason that the case under consideration has in it no engagement or obligation to maintain and support the grantor. Pomeroy, when treating a promise to maintain and support as a consideration for the grant of land, at section 686, vol. 6, has stated the fact that:

"In Wisconsin and Indiana, the grantee's promise, though oral, is treated as a condition subsequent, on a breach of which the grantor has a right of re-entry, and, generally, the right to have his title quieted or the cloud cast thereon by the conveyance removed."

Reference to decisions in Indiana disclose the fact that there the effect of well-recognized legal principles have been at least illogically denied in order to avoid the consequences of hard cases. As appears from the note of the annotator at page 919 et seq. of 43 L. R. A. (N. S.), the courts of the states of Wisconsin and Indiana recognize and apply the doctrine that a condition subsequent may be implied; in immediate opposition to the doctrine established in this state through Zimmerman v. Daffin and Elyton Land Co. v. Railroad Co., supra. Unless this court is willing to overrule these cases, the doctrine

accepted in Wisconsin and Indiana cannot be soundly followed in this jurisdiction. Bethea v. McCullough, 195 Ala. 480, 70 South. 680. In this case the parties stipulated in the writing that if the payment provided should not be made within a specified time the conveyance should be no longer of any effect, thus creating a condition operative upon the estate granted. The case is without bearing upon this appeal. Seaboard Air Line Railroad Co. v. Anniston Mfg. Co., 186 Ala. 264, 65 South. 187. This case is in immediate conflict with the doctrine of Zimmerman v. Daffin and Elyton Land Co. v. Railroad Co., supra. It seems that the conclusion was there attained through the uncertain process which has influenced the courts of Wisconsin and Indiana, which is in opposition to the doctrine long established in this state. It had not theretofore been held by this court in any case that the breach of a promise, affording the consideration of an executed conveyance, operated in any wise to create a condition subsequent. See Dixon v. Milling, 102 Miss. 449, 59 South. 804, 43 L. R. A. (N. S.) 920, 921. If it is assumed that the case under consideration is of the class of cases wherein lands are conveyed upon the promise of the grantee to maintain and support the grantor or another; the cancellation decree in the present case is in immediate conflict with Gardner v. Knight, 124 Ala. 273, 27 South. 298, in which, in this particular, sound legal principles were recognized and applied.

In my opinion, the decree of the chancellor was correct, and should have been affirmed.