## RUSSELL et al. v. CARVER. (8 Div. 414.)

(Supreme Court of Alabama. June 30, 1922. Rehearing Denied Oct. 12, 1922.)

Cancellation of instruments ⊜⟹15—Equity will intervene to cancel deed by aged grantor where grantee fails and refuses to perform his obligation.

Conveyances of property by aged and infirm people in consideration of promised support and maintenance are peculiar in their character and incidents, and are contracts for personal services, and equity will intervene to cancel a conveyance where the grantee fails or refuses to perform his obligation, as legal relief by periodic suits for damages is manifestly inadequate.

McClellan, J., dissenting.

Appeal from Circuit Court, Marshall County; W. W. Haralson, Judge.

Bill by Micajah Carver against Carrie E. Russell and Thomas B. Russell, to cancel a deed. From a decree granting the relief prayed, defendants appeal. Affirmed.

John A. Lusk & Son, of Guntersville, for appellants.

Where the grantee substantially carries out the agreement for support and maintenance, the grantor cannot rescind the conveyance and recover the property because he becomes dissatisfied and himself prevents further performance by the grantee. 241 Ill. 441, 89 N. E. 642, 25 L. R. A. (N. S.) 932; 144 Ky. 102, 137 S. W. 840; 9 C. J. 1186; 133 Mich. 643, 95 N. W. 740; 247 Ill. 510, 93 N. E. 324, 139 Am. St. Rep. 342; 85 N. J. Eq. 165, 95 Atl. 1016, Ann. Cas. 1918B, 452.

Street & Bradford, of Guntersville, for appellee.

The decree of the chancellor was without error. 202 Ala. 525, 81 South. 27.

SAYRE, J. Appellee filed the bill in this cause to cancel, vacate, and annul a deed he had made to appellant, his daughter, on consideration that she would support and maintain complainant and his wife during the remainder of their lives. The wife died before any differences arose between the parties, and afterwards defendant, herself well advanced in middle age, married a man between whom and complainant there was much bad feeling. It is averred that defendant failed and refused to perform her obligation under the contract. No question is raised concerning the equity of the bill, it being conceded that in cases of this peculiar character, the remedy at law being wholly inadequate, equity, under our late decisions, will intervene to cancel the deed when the grantee has failed and refused substantially to perform his obligations under the contract. Johnson v. Chamblee, 202 Ala. 525, 81 South. 27. However, we think it well to state the ground of our decree. Such cases are sui generis. Conveyances of property by aged and infirm people in consideration of promised support and maintenance are peculiar in their character and incidents, and with them the courts deal on principles not applicable to ordinary conveyances. Bogie v. Bogie, 41 Wis. 209; Cree v. Sherfy, 138 Ind. 354, 37 N. E. 787; 28 Cent. Law Jour. p. 321. The writer took occasion in Brindley

v. Brindley, 197 Ala. 221, 72 South. 497, to remark that the courts very generally have found a way to relief in such cases, and the remark was abundantly justified by the authorities cited. Relief to the grantor in such cases has been based on various considerations. It appears to Mr. Pomeroy that less violence is done to established principles by raising a lien or charge ex equo et bono in the grantor's favor (5 Pom. Eq. Rem. [2d Ed.] § 2108, note 66), and in several jurisdictions this path is followed; but that remedy has been denied in this state by the decision in Burroughs v. Burroughs, 164 Ala. 329, 50 South. 1025, 28 L. R. A. (N. S.) 607, 137 Am. St. Rep. 59, 20 Ann. Cas. 926. In Gardner v. Knight, 124 Ala. 273, 27 South. 298, it was ruled that the grantor had no remedy save by way of action at law; but the authorities elsewhere are well-nigh unanimous that the remedy at law affords no substantial relief. Mr. Pomeroy (section 2108) says: "Legal relief by periodic suits for damages is manifestly inadequate." And Gardner v. Knight has been overruled. Johnson v. Chamblee, supra. "A contract to support is a contract for personal services; it cannot be performed by another, unless the person receiving the support consents to receive it" from that other. It is also continuous and indivisible in its nature and involves elements of trust. In Grant v. Bell, 26 R. I. 288, 58 Atl. 951, the court said:

"While such contracts are not, often in form a trust, they are usually in fact a trust. One under the stress of infirmity or age surrenders his property to another, for relief from care and anxiety, and receives in return an assurance of support. The result, so far as the donor is concerned, would be no different if he had made an express deed of trust. The parties do not contemplate a mere contract, but an obligation binding on conscience as well as in law. The arrangement rests in confidence on the part of the grantor. It would, indeed, be a hard rule, when the feeble party has fully performed his part of the contract in the hope of security and quiet, to require him to spend the remainder of his life in lawsuits to compel performance by the other party."

The courts have differed as to the form and equitable grounds of relief; but, as we have already said, they have held with substantial unanimity that relief will be afforded against conveyances for support on nonperformance of the agreement. Abbott v. Sanders, 80 Vt. 179, 66 Atl. 1032, 13 L. R. A. (N. S.) 725, 130 Am. St. Rep. 974, 12 Ann. Cas. 898. In a plurality of jurisdictions relief in such cases by way of canceling the deed is granted on the broad ground that there is no adequate relief at law, and equity will not permit a party to enjoy the fruits of a contract when he deliberately refuses to perform the obligations thereby imposed on him. Abbott v. Sanders, 12 Ann. Cas. 898, note bottom of page 901, where the cases are collated; 9 C. J. 1187, § 52, note 19. Our latest adjudication is in line with the cases referred to. Johnson v. Chamblee, supra. Woodley v. Woodley, 201 Ala. 662, 79 South. 134, drove to the same result, though that case was affected by a peculiarity not here present, viz. a mortgage to secure the performance of the grantee's promise.

The issue between the parties is one of fact, defendant averring that, substantially, she has ever been willing to perform and did in fact perform her obligation to complainant as long as he remained under the roof he gave her, and that his leaving was the result of the petulance and unreasonable humors of old age, not any substantial fault of her own. The evidence has had careful consideration, and we have concluded, in view of all the circumstances, which need not be stated in detail, that the old man, the complainant, was justified in seeking another dwelling place, and in consequence that the chancellor committed no error in his decree.

Affirmed.

All the Justices concur, except McCLELLAN, J., who dissents.

McCLELLAN, J. In my opinion the decree under review, canceling the deed from Micajah Carver and wife to Carrie Carver (later Russell), their daughter, executed August 22, 1914, is laid in manifest error, and should be reversed instead of affirmed. Neither in point of fact or of law is the decree to be justified. The ground for cancellation is that as the consideration for the deed the daughter engaged to care for, maintain, and support her aged parents, during their lives, did not keep the contract, ordered the appellee away from the premises, made it too disagreeable for him to live on the premises, all occurring, it is averred, either after Russell began visiting the defendant or after their marriage; the marriage to Russell being contracted against her father's protest. The testimony presented, even of complainant himself, refutes material averments of the bill, including the major allegation of the bill that cancellation was complainant's due because she had breached her asserted agreement to maintain, etc., her parents during their lives. The wife of complainant died some years before the bill was filed, while the parents and daughter resided on the 40-acre, illy-improved farm. It is plain from the record that the reason inspiring the proceeding to cancel the conveyance was this marriage of the appellant; a marriage that complainant himself testified made him "mad" with his daughter. The record abounds with evidence that the motive for the execution of the deed to the daughter in 1914 was gratitude for her long, faithful service to her aged parents, the complainant admitting as a witness, and having repeatedly declared to others, that the daughter deserved to have the farm because she had remained with her parents, had worked in the field to contribute to the

payment of its purchase price, and had faithfully done burdensome household work and bestowed personal care on her aged and infirm parents. After the marriage complainant exacted $150 rent note (dated September 30, 1919) for the place for the year 1920; both the daughter and her husband executing the rent note, the testimony leaving in no doubt whatever that complainant then agreed to contribute a definite proportion of the "rations" consumed by the three. The complainant collected about $85 on this rent note. Even if it should be conceded (against the distinct weight of the evidence) that the daughter engaged to maintain and support her parents, the indicated arrangement made after her marriage was an unmistakable abandonment of any right to rely upon the earlier engagement. Complainant was and doubtless is yet a pensioner, drawing from the United States $96 each quarter. The record shows without dispute that the farm produced little, having cost originally only $80, and being but partially cultivated.

So far as presently important the deed to the appellant reads:

"Know all men by these presents:

"That we Macajah Carver and Mary Ann Carver his wife of Marshall county, and state of Alabama, for and in consideration of the sum of five dollars, to us in hand paid, the receipt whereof is hereby acknowledged, have granted, bargained and sold, and by these presents do grant bargain, sell and convey and give to Carrie E. Carver her heirs and assigns, the following described real estate, to wit:

"The northwest quarter of the southeast quarter of section twenty-three in township seven south of range one east of Huntsville Meridian in Marshall Co. Ala., containing forty acres.

"(The said Macajah Carver and Mary Ann Carver retain the right to hold said land until their death and this deed to be in full force and effect.)

"Together with all and singular the tenements and appurtenances thereunto belonging or in any wise appertaining To have and to hold to the said Carry E. Carver her heirs and assigns, in fee simple forever."

As appears the deed reserved to the grantors the right to hold "said land until their death." Planters' Bank v. Davis, 31 Ala. 626; Proctor v. Scharpff, 80 Ala. 227, 229; Graves v. Wheeler, 180 Ala. 412, 417, 61 South. 341. It is shown beyond dispute that complainant did not convey by the deed practically all he owned to his daughter; the reservation was of the use for both parents of the premises for their lives and his pension; and later, when the daughter married over his protest, he exacted of the daughter and her husband an exorbitant rent for the place for the year 1920. Only the relation of these parties to this complainant can account for their agreement to pay such high rent. It is manifest from the record that in any event the complainant was and is blessed with abundance as compared with his practically impecunious daughter and her husband; and this fact further emphasizes the great injustice that this decree inflicts upon her.

The more serious phase of the deliverance in this case is, as it was in Woodley v. Woodley, 201 Ala. 662, 664, 667, 79 South. 134, that a condition subsequent by which title may be divested is held to be created by the nonperformance of a mere parol agreement to maintain and support the grantor that, it is asserted, afforded the consideration for the conveyance; no such matter appearing in the instrument assailed. In the Woodley Case, supra, the writer (Justices Anderson and Mayfield concurring in that dissent) set down the authorities in this state and the considerations that contradict the conclusion that a condition subsequent could be created by parol, and the unsoundness of the pronouncement, similar in principle, made in Seaboard R. Co. v. Anniston Co., 186 Ala. 264, 65 South. 187, was affirmed as of the apt authority established in Elyton Land Co. v. Railroad Co., 100 Ala. 396, 405, 406, 14 South. 207, and Zimmerman v. Daffin, 149 Ala. 388, 42 South. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58. Vizard v. Robinson, 181 Ala 349, 357, 358, 61 South. 959, also accords with the last noted decisions. The subject is more recently treated in Libby v. Winston (Ala. Sup.) 93 South. 631.[1] See, also, 2 Devlin on Deeds (3d Ed.) § 970. This doctrine of the Elyton Land Co. Case and others in its line has long constituted a rule of property in this state, and should not be thwarted or avoided in application at the behest of expediency. In their proper sphere, the courts are but interpreters and administrators of the law, not arbitrators between contestants in their forums. Hamner v. Smith, 22 Ala. p. 442; the declaration in which was recently reproduced in Butler v. Brooks, 204 Ala. at page 197, 85 South. 778. Consistent with the theory of the judicial function it has been well said: "The decisions of courts are not the law; they are only evidence of the law." It is, however, now frankly conceded that cases of conveyances on consideration of an agreement to support and maintain the grantor are sui generis, exempted from the government of established principles because they are peculiar in their character and incidents. Such a pronouncement emphasizes the fact that the only real divergence between the doctrine of Gardner v. Knight, 124 Ala. 273, 27 South. 298, and the recently delivered cases otherwise concluding (aside from Brindley v. Brindley, 197 Ala. 221–223, 72 South. 497) is that this court in Gardner v. Knight recognized and applied established principles, whereas, latterly, this court has declined to do so on the ground that convey-

---

[1] 207 Ala. 681.

ances on consideration to support the grantor are sui generis, exempt from the government of such principles. This method of departure from Gardner v. Knight may serve as an explanation of the court's recent course. It affords no measure of answer to the consistent application of established principles Gardner v. Knight illustrates.

There is no fraud claimed or averred or proved against Carrie Russell, the grantee, in respect of any phase of this transaction. The evidence shows without dispute that from 1914 (when the deed was made) to 1919 she met every possible parental expectation, in their care, etc. Surely, no ground for rescission could exist when to do so would involve the acceptance to the grantors' benefit of the daughter's service for five years, and then, thereafter, belatedly repudiate, without any restoration, the transaction, thereby taking the benefit of her self-sacrificing labors and denying her the advantage the transaction (the deed) granted her. There can be no rescission without restoration except in a few limited instances where restoration would be vain or impossible. The existence of this principle is probably the reason why rescission was not sought by this complainant; but, the conveyance being now canceled, complainant is undoubtedly due her the value of her services, rendered, according to complainant, as the consideration for the conveyance of the remainder in this land. If, as the court now decides, the breach of an unwritten promise to support justifies cancellation of a conveyance made on that character of promise as a consideration, a pronouncement inconsistent with accepted principles (Holloway v. Smith, 198 Ala. 118, 119, 73 South. 417, and cases therein cited; Brindley v. Brindley, 197 Ala. 221–223, 72 South. 497). I am unable to conceive how cancellation can be consistently or justly decreed, other than by the arbitrary exercise of judicial power, when any other promise, given as consideration for a conveyance, is not performed. Should the certainty and stability of titles to real property be subjected to that character of menace?

In my opinion the decree should be reversed, and a decree here rendered dismissing the bill.